## BIARD & SCALES v. TYLER BUILDING & LOAN ASS'N.

(Court of Civil Appeals of Texas. Dallas. April 13, 1912. Rehearing Denied May 18, 1912.)

1. ABATEMENT AND REVIVAL (§ 10*)—PENDENCY OF SUIT IN OTHER JURISDICTION.

The pendency of one suit in one jurisdiction is no bar to a suit involving the same controversy in another jurisdiction.

[Ed. Note.—For other cases, see Abatement and Revival, Cent. Dig. §§ 86–104; Dec. Dig. § 10.*]

2. ELECTION OF REMEDIES (§ 3*)—ACTS CONSTITUTING.

One prosecuting to judgment an action to recover the value of land traded for a stock of merchandise, based on fraudulent representations of the value and character of the stock inducing the trade, elects his remedy, notwithstanding a pending suit for the recovery of the land under allegations of fraud and conspiracy.

[Ed. Note.—For other cases, see Election of Remedies, Cent. Dig. §§ 3, 4; Dec. Dig. § 3.*]

3. ABATEMENT AND REVIVAL (§ 12*)—PENDENCY OF SUIT IN FEDERAL COURT—EFFECT.

The pendency of a suit in the federal court does not abate a suit pending in the state court for the same relief.

[Ed. Note.—For other cases, see Abatement and Revival, Cent. Dig. §§ 87–91, 94, 95, 98; Dec. Dig. § 12.*]

4. EVIDENCE (§ 318*)—HEARSAY EVIDENCE.

In an action for the value of land traded by plaintiff for a stock of merchandise, based on defendant's fraudulent representations as to the value and character of the stock inducing the trade, a letter written by plaintiff's president to defendant after the trade was effected, stating that he had a message from a third person that he did not like the stock, was hearsay, as to the statement of the third person, who, as an expert, had been sent by plaintiff to inspect the stock, and was inadmissible as against defendant.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1193–1200; Dec. Dig. § 318.*]

5. EVIDENCE (§ 151*)—MOTIVE—ADMISSIBILITY.

Where, in an action against a real estate broker for fraud inducing plaintiff to exchange

land for a stock of merchandise, plaintiff alleged a conspiracy between defendant, the owner of the stock, and a third person to defraud plaintiff out of his land, and that, in pursuance of the conspiracy, a deed, executed by plaintiff, was delivered by defendant to the third person, it was error to refuse to permit defendant to testify that plaintiff had left it to his discretion as to whom the deed should be delivered for delivery to the owner of the stock, on compliance with the contract, and that the name of the third person had been suggested by plaintiff as a proper person, and thereby show that his act in delivering the deed to the third person, who delivered it to the owner of the stock, was not a fraudulent act.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 440; Dec. Dig. § 151.*]

**6. FRAUD (§ 54*)—EVIDENCE—ADMISSIBILITY.**

In an action against a real estate broker for fraud in inducing plaintiff to trade his land for a stock of merchandise, based on the broker's fraudulent representations as to the character and value of the stock, the refusal to permit a witness to testify that he had inspected the stock at the request of the broker, and that the broker had advised with the witness about the value of the stock, and that the witness had agreed with him as to the value represented to plaintiff, was erroneous, since, when fraud is charged, a party may show that he acted on the advice of a reliable party to show good faith.

[Ed. Note.—For other cases, see Fraud, Cent. Dig. §§ 50, 51; Dec. Dig. § 54.*]

**7. FRAUD (§ 52*)—EVIDENCE—ADMISSIBILITY.**

Where, in an action against a real estate broker for fraud inducing plaintiff to trade his land for a stock of merchandise, the evidence showed that the contract of exchange did not provide that plaintiff should not have the right to inspect before receiving the merchandise, the court erred in permitting a witness for plaintiff to testify that he had not authorized the broker to enter into a contract by which plaintiff should accept the stock without inspection.

[Ed. Note.—For other cases, see Fraud, Cent. Dig. § 48; Dec. Dig. § 52.*]

**8. FRAUD (§ 52*)—EVIDENCE—ADMISSIBILITY.**

Where, in an action against a real estate broker for fraud inducing plaintiff to trade his land for a stock of merchandise, the letters and telegrams admitted in evidence, authorizing the broker to make the trade, referred to the stock as a stock of merchandise, the testimony of a witness as to whether he would describe the stock as a line of dry goods, clothing, boots, shoes, and hats was inadmissible.

[Ed. Note.—For other cases, see Fraud, Cent. Dig. § 48; Dec. Dig. § 52.*]

**9. TRIAL (§ 250*)—MISLEADING INSTRUCTIONS.**

Where, in an action against a real estate broker for fraud inducing plaintiff to trade his land for a stock of merchandise, there was no testimony or contention that the stock was to be first class, an instruction, authorizing a verdict for plaintiff if the broker represented that the stock was a first-class stock in every particular, was prejudicial.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 584–586; Dec. Dig. § 250.*]

**10. TRIAL (§ 251*)—INSTRUCTIONS — ISSUES NOT RAISED BY PLEADINGS.**

Where, in an action against a real estate broker for fraud inducing plaintiff to exchange his land for a stock of merchandise, the petition did not allege concealment, or the use of devices by the broker to mislead or induce plaintiff to forego inquiry, but merely alleged that the broker fraudulently made specified representations, and to accomplish the fraud did specified things, a charge, authorizing a verdict for plaintiff if the broker made concealments of material facts, or used devices which would mislead plaintiff, or induce him to forego inquiry into the quality and value of the stock, was erroneous as submitting an issue not raised by the petition, and placing on the broker the burden of meeting an issue not in the case.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 587–595; Dec. Dig. § 251.*]

**11. FRAUD (§ 65*)—INSTRUCTIONS.**

Where, in an action against a real estate broker for fraud inducing plaintiff to trade his land for a stock of merchandise, there was evidence of implied authority in the broker to select a third person to take possession of the deed for delivery to the owner of the stock, on his complying with the contract of exchange, an instruction that, if the broker acted in good faith in selecting the third person to hold the deed, he was not guilty of fraud in so acting, though the third person delivered the deed to the owner of the stock, contrary to the agreement of the parties, was erroneously refused.

[Ed. Note.—For other cases, see Fraud, Cent. Dig. §§ 72–74; Dec. Dig. § 65.*]

**12. FRAUD (§ 65*)—EVIDENCE—INSTRUCTIONS.**

Where, in an action against a real estate broker for fraud inducing plaintiff to exchange his land for a stock of merchandise, there was evidence that the land and merchandise were of about equal value, and that plaintiff was not damaged as claimed, the refusal to give a special charge that, if the value of the stock was substantially equal to the value of the land, the verdict must be for the broker was erroneous.

[Ed. Note.—For other cases, see Fraud, Cent. Dig. §§ 72–74; Dec. Dig. § 65.*]

**13. TRIAL (§ 253*)—INSTRUCTIONS—IGNORING ISSUES.**

Where, in an action against a real estate broker for fraud inducing plaintiff to exchange his land for a stock of merchandise, plaintiff's cause of action was based on the existence of a conspiracy between the broker, the owner of the stock, and a third person obtaining possession of the deed executed by plaintiff, and delivering the same to the owner of the stock, and the court charged on conspiracy, the refusal to charge that, before a verdict could be rendered for plaintiff, it was necessary that there had been a conspiracy, and if the conspiracy did not exist the verdict must be for defendant, was erroneous, though it was the converse of the charge given.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 613–623; Dec. Dig. § 253.*]

**14. FRAUD (§ 65*)—CONSPIRACY—EVIDENCE—INSTRUCTIONS.**

Where, in an action against a real estate broker for fraud inducing plaintiff to exchange his land for a stock of merchandise, the petition charged that the broker, the owner of the stock, and a third person conspired together to defraud plaintiff out of his land, and that the deed executed by plaintiff was delivered in furtherance of the conspiracy, and there was testimony that the stock of goods actually invoiced and tendered under the contract was materially different from the stock the broker examined, and which, according to his testimony, was to be delivered to plaintiff under the contract, the refusal to charge that, if the broker was not a party to the conspiracy of the owner of the stock and the third person, and did not fraudulently deliver the deed, the verdict must be for him was erroneous.

[Ed. Note.—For other cases, see Fraud, Cent. Dig. §§ 72–74; Dec. Dig. § 65.*]

15. TRIAL (§ 307*)—DELIBERATION OF JURY.
Where, in an action for fraud inducing an exchange of land for stock of merchandise, letters and telegrams in relation to the transaction before the closing of the trade were received in evidence, it was error to refuse to permit the jury, when they retired to consider the verdict, to take with them the letters and telegrams.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 732–737; Dec. Dig. § 307.*]

Appeal from District Court, Dallas County: J. C. Roberts, Judge.

Action by the Tyler Building & Loan Association against Biard & Scales. From a judgment for plaintiff, defendants appeal. Reversed and remanded.

Yancey Lewis, of Dallas, and Nelson Phillips, of Austin, for appellants. Lasseter & McIlwaine, of Tyler, and Tierley, Nelms & Adams, of Dallas, for appellee.

RAINEY, C. J. Appellee brought this suit against the appellants to recover the value of certain lands; the petition being, in substance, as follows:

That the defendants were engaged in the real estate business in Dallas, Tex., engaged in the business, among other things, of exchanging real estate for others. That appellee, on the 1st of September, 1909, owned and was possessed of 2,888 acres of land in Angelina county, Tex., reasonably worth $18,732, and 1,406 acres in Cherokee county, Tex., reasonably worth $9,139; title to the last tract being in the estate of Susan W. Thorn, deceased, of which John Durst was independent executor, but in fact belonging to appellee. That it listed said land with appellants for the purpose of being sold or traded. That on September 18, 1909, appellants represented to it that they had been offered for said land a stock of general dry goods, consisting of clothing, hats, dresses, boots, shoes, etc., which inventoried at cost prices $60,000, by the Mitchell Dry Goods Company, and recommended such trade. That the defendant Biard, acting for appellants, represented to appellee that he had had 20 years' experience in such business. That he had examined between $20,000 and $30,000 worth of the stock, and that it was a first-class stock in every particular. That the remainder of the stock was to be taken from the store of said dry goods company in Kansas City, and would be as good or better than the stock examined by him. That, relying upon such statements, appellee authorized the trade, subject to its examination of the goods and checking of the inventory. That it thereupon executed and caused to be executed deeds to said land, in which B. W. Pope was named as grantee at the instance of said company, which deeds were delivered to appellants for safe-keeping, to be delivered when it had inspected the goods and checked the inventory. That the deeds were placed in appellants' possession on October 23, 1909, and appellee immediately secured the services of an expert dry goods man to go to Kansas City and inspect the stock, who did go there for that purpose, arriving there on October 24, 1909. On the same day, appellants, knowing of the presence of said expert in Kansas City, and that he had no opportunity of making the examination of the stock, in violation of their authority and against appellee's direction, delivered the deeds to said dry goods company, and, without appellee's knowledge or consent, appointed one Ernest Lovan to act for appellee in accepting the stock. That Lovan was the party who, throughout the negotiations, had represented and was then representing said dry goods company as its agent. That appellants and said dry goods company, acting by and through Lovan, conspired together to defraud appellee out of its land, and the deeds were delivered in furtherance of such conspiracy. That the stock of goods received for the land was not a stock of general dry goods, as was represented, but consisted mainly of cheap and worthless jewelry, notions, etc., containing no boots, shoes, or clothing, as had been represented to it, and all of which was practically worthless. It prayed judgment against appellants for the value of the land, and for additional items of expense, which latter items were stricken out on demurrer of appellants.

Appellants filed their cross-bill to recover commissions for services rendered in making the trade, answered by general denial, and specially: The institution and pendency of another suit by appellee against B. W. Pope, J. W. Collier, the National Bank of Commerce of Kansas City, and the Mitchell Dry Goods Company of Kansas City, originally filed in the district court of Angelina county, Tex., and thereafter removed and then pending in the United States Circuit Court for the Eastern District of Texas, at Tyler, which suit, it alleged, was then being actively prosecuted by the appellee as the plaintiff therein, and in which it was seeking to recover of the defendants named therein the identical land for the value of which it sought recovery against appellants in this suit, under allegations substantially the same as alleged in this suit, alleging fraud and conspiracy in the delivery of said deeds, etc., and praying for cancellation of said deeds and a recovery of the land. Said suit was alleged to be an election of remedies; and it was further pleaded in the alternative in this view that plaintiff be required to now elect which of said suits it would prosecute. It was further alleged, in effect, that appellee had assumed control of said stock of goods and made divers attempts to sell same; with full knowledge of the transaction he had ratified and affirmed the trade.

Appellee demurred to the plea with ref-

erence to the pendency of another suit, which demurrer was sustained. A trial resulted in favor of appellee for $19,323, and appellants prosecute this appeal.

[1] The first assignment complains of the overruling of the plea in abatement, relating to the pendency of another suit, etc. This assignment is not well taken. Our courts have frequently held that the pendency of one suit in a different jurisdiction is no bar to a suit involving the same controversy in another tribunal. Garza v. Piano Co., 126 S. W. 906, and authorities cited; Milling Co. v. Gin Co., 132 S. W. 856.

[2, 3] As to the alternative plea seeking an election on the part of plaintiff to choose the cause of action he will prosecute, we are of the opinion that the prosecution of this suit to judgment was equivalent to an election, which remedy plaintiff had selected. Furthermore, the pendency of the suit in the federal court would not abate a suit pending in the courts of this state. Railway Co. v. Barton, 24 Tex. Civ. App. 122, 57 S. W. 292; Harby v. Patterson, 59 S. W. 64.

[4] The court erred, as shown by appellants' assignment of error, in admitting a letter written by appellee's president to appellant Biard after the trade was effected by Biard, which letter stated: "I have a message from Mr. Irion that he doesn't like the goods and saw you had returned home. Am awaiting further particulars. Meantime, hold all deeds and papers you have, subject to my order." Irion was the "dry goods expert" sent to Kansas City by appellee to inspect the goods; and the letter, as to his statement, was hearsay, and therefore not admissible. Williams v. Deen, 5 Tex. Civ. App. 575, 24 S. W. 536.

[5] The court erred, as shown by the fourteenth assignment of error, in refusing to permit appellant Biard to testify what his purpose or reason was for placing the deeds in question in the possession of the said Ernest Lovan. The reason, in effect, being that Durst, the president of appellant, had left it to his discretion, and, prior to going to Kansas City, he had mentioned to Durst the name of Lovan as a proper person, to which Durst assented; and that he placed said deeds with Lovan only for delivery to Pope, or the Mitchell Dry Goods Company, upon the compliance with their contract in respect to delivering the stock of merchandise that Biard had traded for, in behalf of plaintiff, and not otherwise.

There being testimony that Biard had authority to act in the premises, it cannot be said, as a matter of law, that his delivery of the deeds to Lovan was a fraudulent act; but such act was a mixed one of law and fact, and depended upon the good faith of Biard, which was to be determined from all the circumstances. Good faith being the controlling question, it is a matter of fact; and we see no good reason why Biard, who knows

the fact, should not be allowed to testify what his reasons were for delivering the deed. In Wade v. Odle, 21 Tex. Civ. App. 656, 54 S. W. 786, where the question of motive was one of pertinent inquiry, the court said: "We think the evidence was competent, relevant, and material. Since parties to the suit and parties interested in the transaction are permitted by our statutes to testify, we see no reason why they may not testify what their intentions were, especially where the intention with which the act was done may render the act void or not. The intention accompanying the act is often the very gist of the inquiry, and may be inferred from other testimony; and, if it may be proved or disproved by inference, why not by positive testimony from those who actually know? The credibility of the interested witness and the weight to be given his evidence, of course, are matters exclusively for the consideration of the jury; but the evidence was competent, relevant, and material"—citing authorities. Hamburg v. Wood, 66 Tex. 168, 18 S. W. 623; Brown v. Lessing, 70 Tex. 544, 7 S. W. 783; Sweeney v. Conley, 71 Tex. 543, 9 S. W. 548; Haney v. Clark, 65 Tex. 93.

[6] The court erred in refusing to permit T. H. Gilliland to testify that he inspected the stock of merchandise at the request of Biard. That Biard requested Gilliland to inspect the stock with him was a circumstance tending to show good faith on the part of Biard in the transaction, and the evidence should have been admitted. It was competent to show by Biard, he having made the trade for appellee, and his good faith therein being an issue, that he advised with Gilliland about the value of the merchandise, and that Gilliland agreed with him that it was worth 35 or 40 cents on the dollar. When fraud is charged, a party may show that he acted upon the advice of reliable parties to show good faith. O'Neil v. Bank, 67 Tex. 36, 2 S. W. 754; Cyc. vol. 20, p. 116.

[7] The eighth assignment presented is: "The court erred in permitting the witness Durst, in behalf of plaintiff, over the objection of defendants, to testify that he had never authorized the defendant Biard to enter into a contract by which the plaintiff was to accept the stock in question without inspection or examination, for the reason that the testimony in no wise showed or tended to show that the defendant Biard had ever entered into any contract on behalf of plaintiff by which the plaintiff was bound to accept such stock of merchandise without inspection and examination, and the testimony was therefore immaterial, incompetent, and irrelevant, and not predicated upon anything actually done or committed by the defendant Biard, and was accordingly prejudicial in its effect, as is more fully shown by defendants' bill of exceptions No. 7."

The proposition submitted is: "The contract entered into by Biard for the trade of

the land in question for the stock in question did not provide that appellee should not have the right to inspect and examine said stock of merchandise. It was therefore incompetent and prejudicial to appellants to permit Durst, appellee's president, to testify that he had not authorized such a contract."

We think this evidence incompetent and prejudicial, as it raised an issue not pertinent, as there was no evidence showing that Biard made such a contract. The contract was in writing, and did not provide that appellee should not have the right to inspect before receiving the merchandise.

[8] The court erred in permitting appellee's counsel to ask witness Gaines, upon cross-examination, if he would describe the particular stock of merchandise in question as a line of dry goods, clothing, boots, shoes, and hats. Biard's authority for making the trade for the appellee was contained in letters and telegrams, in none of which was the stock of goods referred to as a stock of dry goods, clothing, boots, shoes, and hats, but only as a stock of merchandise; hence the inquiry whether it could be called a stock of dry goods was immaterial and incompetent.

[9] The court erred in paragraph No. 1 in instructing the jury to find for plaintiff, if Biard represented, among other things, "that said stock was a first-class stock in every particular." There was no testimony or contention that the stock was to be first class; and such expression was prejudicial and calculated to influence the jury.

[10] The court erred in the third paragraph of his charge in instructing the jury to find for plaintiff, if they believed, among other things, that the defendants, acting through Biard, "did make * * * concealment of material facts, or did use devices which would mislead the plaintiff, or induce the plaintiff to forego inquiry into the quality and value of the stock of merchandise which was offered in exchange for said lands." They did not allege concealment or the use of devices to mislead or induce plaintiff to forego inquiry, but did allege that defendants falsely and fraudulently made certain representations, and to accomplish the fraud did certain things, which were specified therein. The charge assumes an issue not made by the petition, and places upon defendants the burden of meeting an issue not in the case. Railway Co. v. Measles, 81 Tex. 474, 17 S. W. 124; Wells v. Houston, 23 Tex. Civ. App. 629, 57 S. W. 584; Gipson v. Williams, 27 S. W. 824; Thorwegan v. King, 111 U. S. 549, 4 Sup. Ct. 529, 28 L. Ed. 514.

[11] The court erred in refusing appellants' requested charge No. 7a, which reads as follows: "Upon the issue as to whether or not the delivery, by the defendant Biard, of the two deeds, referred to in the plaintiff's petition, was without authority, you are instructed that, if from the evidence you believe that said John Durst, president of the plaintiff, turned said deeds over to the defendant Biard without any specific instructions, and that, in the light of all the facts and circumstances shown in the evidence, the defendant Biard was thereby reasonably induced to believe, and had good reason to believe, that he was given the discretion of either himself finally closing the transaction in question and making final delivery of said deeds to the Mitchell Dry Goods Company, or the said B. W. Pope, upon compliance upon their part with a certain contract, of date September 24, 1909, introduced in evidence before you, or of selecting some one else for that purpose, and that, in the exercise of an honest discretion, and in good faith and with bona fide intention of having said deeds delivered to the said Pope or Mitchell Dry Goods Company only in the event the said contract was complied with on their part, the said Biard placed said deeds in the possession of the said Lovan, to be delivered by him to the said Pope, or Mitchell Dry Goods Company, only in the event said contract was complied with by them, you will find against the plaintiff and in favor of the defendants upon said issue." There was testimony which raised the issue of implied authority in Biard to select Lovan to act in the matter; and if Biard acted in good faith in that matter he would not be guilty of fraud in so acting. Wright v. Isaacks, 43 Tex. Civ. App. 223, 95 S. W. 55; Tynan v. Dullnig, 25 S. W. 465; Cyc. vol. 31, p. 1427.

The court erred in not giving appellants' charge, which reads: "Upon the issue as to whether the defendant Biard fraudulently misrepresented to the plaintiff's president, John Durst, the stock of merchandise shown by the evidence to have been traded for by him, you are instructed that you will find in favor of the defendants, unless, from a preponderance of the evidence, you believe that the said Biard, on or about the 18th day of September, 1909, fraudulently made to the said Durst the representations that it is charged in plaintiff's petition he did make to him on or about said date, respecting said stock; that is to say, unless you believe and find from a preponderance of the evidence that on or about the 18th day of September, 1909, the defendant Biard fraudulently represented to the said Durst that 'he had had twenty years' experience in the dry goods business, and that he had examined between twenty and thirty thousand dollars worth of the stock offered, and that it was a first-class stock in every particular, and that the remainder of the stock was to be taken from the store of the Mitchell Dry Goods Company in Kansas City, and was to be as good or better than the stock examined by him.' Furthermore, in determining this issue, you are instructed that you will not consider any representations or statements made by the defendant Biard subsequent to the 18th day of September, 1909, respecting said stock of merchandise, if you believe from the evidence

that subsequent thereto he made to said Durst any statement or representation concerning the same, but will confine your consideration to only such statements as were made by the said Biard to the said Durst on or about the 18th day of September, 1909. And if from the evidence you believe that the only statements or representations made by the said Biard to the said Durst on or about the 18th day of September, 1909, in respect to said merchandise, were in substance that it was a better stock of merchandise than that referred to in the telegram from said Biard to the said Durst, of date September 17, 1909, and was worth 35 or 40 cents on the dollar, your verdict will be for the defendants on this issue." Under the pleadings and evidence, this was a correct application of the law to the evidence adduced on the trial, and should have been given.

[12] The court erred in refusing appellants' requested charge, which is: "If you believe and find from the evidence that the cash market value at Kansas City, Mo., on October 25, 1909, of the stock of merchandise described in the inventory introduced in evidence before you was substantially equal to or in excess of what you believe and find from the evidence to have been the cash market value of the two tracts of land referred to in plaintiff's petition, in Angelina county, Tex., and Cherokee county, Tex., on said date, your verdict will be for the defendants." There was testimony tending to show that the merchandise and the land were of about equal value, and that appellee was not damaged as alleged in the petition. Under the circumstances, the special charge should have been given. Moore v. Cross, 87 Tex. 561, 29 S. W. 1051; Thompson v. Newell, 118 Mo. App. 405, 94 S. W. 557.

[13] The court refused a special charge, requested by appellee, which is as follows: "Before you would be authorized to find a verdict for the plaintiff in this case, in any event, it is necessary that you believe and find from a preponderance of the evidence that there was formed and existed a conspiracy, as alleged in plaintiff's petition. Accordingly, if you should find and believe from the evidence that the conspiracy charged in plaintiff's petition was not formed and did not exist, your verdict will be for the defendants." Plaintiff's cause of action was based on the existence of a conspiracy, and proof thereof was essential to a recovery against defendants. The court charged on conspiracy; but the special charge was the converse thereof, and should have been given.

[14] The court erred in refusing appellants' requested charge, which is: "Although you may believe and find from the evidence that the alleged delivery by the defendant Biard of the two deeds referred to in plaintiff's petition was without authority on his part, yet, unless you further believe and find from the evidence that the conspiracy charged and

alleged in plaintiff's petition existed, and that the defendant Biard was a party thereto, and that the said deeds were fraudulently delivered by the said Biard in furtherance of such alleged conspiracy, you would not be authorized to find for the plaintiff. Accordingly, though you should believe and find from the evidence that said deeds were delivered by the defendant Biard without authority, yet if you further believe and find from the evidence that the conspiracy charged and alleged in plaintiff's petition did not exist, or that the defendant Biard did not fraudulently deliver said deeds (that is to say, if you find he did not deliver them with the intent and purpose to cheat and defraud the plaintiff out of its lands), your verdict would be for the defendants, although you may believe and find from the evidence that the Mitchell Dry Goods Company, or Ernest Lovan, may have intended to so cheat and defraud the plaintiff out of its land." There was testimony which raised the issue that the stock of goods actually invoiced and tendered appellee under the contract was materially different from the stock Biard examined, and that, according to his testimony, was to be delivered appellee under the contract. The charge was proper under the circumstances, and should have been given.

[15] We think the court erred in not permitting the jury, when they retired to consider their verdict, to carry with them the letters and telegrams, in relation to the transaction in question before the closing of the trade, that were introduced in evidence.

The judgment is reversed, and the cause remanded.