TEXAS & N. O. R. CO. v. TURNER.
(No. 26.)

(Court of Civil Appeals of Texas. Beaumont. Nov. 27, 1915. On Motion for Rehearing, Jan. 20, 1916.)

1. RAILROADS ☞446 — INJURY TO STOCK—QUESTION FOR JURY—OWNERSHIP.

In a suit against a railroad for damages for killing three mules and injuring another, evidence *held* to make the plaintiff's ownership when they were killed or injured a question for the jury.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1627–1641; Dec. Dig. ☞446.]

2. APPEAL AND ERROR ☞1002 — VERDICT — CONCLUSIVENESS.

It is not the province of the Court of Civil Appeals to disturb the jury's finding on conflicting evidence.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3935–3937; Dec. Dig. ☞1002.]

3. TRIAL ☞352—INSTRUCTIONS—ASSUMPTION AS TO FACTS.

In a suit against a railroad for the killing of mules, where the plaintiff's ownership was in issue, defendant's special issue as to whether, under an agreement between plaintiff and another the mules become the property of such other, was properly refused, as assuming a sale and indirectly requiring the jury to find a sale.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 840–842, 844, 845; Dec. Dig. ☞352.]

4. RAILROADS ☞443—INJURY TO STOCK—ACTION—BURDEN OF PROOF.

Plaintiff, in a suit against a railroad for killing mules, was required to show by a pre-

ponderance of the testimony, that he owned them when they were killed.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1608–1620; Dec. Dig. ☜443.]

5. TRIAL ☜307—DOCUMENTARY EVIDENCE—TAKING TO JURY ROOM.

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 1957, providing that the jury may take with them any written evidence, refusal of the court, in an action for the killing of mules, where plaintiff's ownership was in issue, to allow the jury to take plaintiff's written statement conflicting with his oral testimony as to ownership, was error.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 732–737; Dec. Dig. ☜307.]

6. APPEAL AND ERROR ☜1069 — HARMLESS ERROR — TAKING DOCUMENTARY EVIDENCE TO JURY ROOM.

Such error was prejudicial, as it denied defendant the statutory right as to a writing bearing upon the material issue in the case.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4136, 4138, 4139; Dec. Dig. ☜1069.]

On Motion for Rehearing.

7. APPEAL AND ERROR ☜1170 — HARMLESS ERROR — TAKING DOCUMENTARY EVIDENCE TO JURY ROOM—RULE OF COURT.

Such error could not be regarded as harmless error, within Court of Civil Appeals rule 62a (149 S. W. x) that no judgment shall be reversed on the ground of trial error, unless the appellate court is of the opinion that it was such a denial of right, or was calculated to cause, and probably did cause, the rendition of an improper judgment.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4066, 4454, 4543; Dec. Dig. ☜1170.]

Appeal from Orange County Court; D. C. Bland, Judge.

Action by J. S. Turner against the Texas & New Orleans Railroad Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Hightower, Orgain & Butler, of Beaumont, for appellant. Bisland & Bruce, of Orange, for appellee.

MIDDLEBROOK, J. This is a suit by the appellee, J. S. Turner, against the Texas & New Orleans Railroad Company, for damages for the killing of three mules, alleged to be worth $275 each, alleging that one mule was killed on the 27th day of September, 1914, and that two mules were killed on the 1st day of October, 1914, that the railroad company negligently permitted its fence to be down and out of repair where the mules entered upon the right of way of the company, and that the appellant railroad company negligently and carelessly, on the dates above mentioned, ran its locomotives and cars against and over said mules and thereby killing them. There was also damages alleged to a fourth mule on the same grounds, alleging the injury of the mule, and that he was damaged thereby in the sum of $150, and that his total damages was the sum of $975. Appellant answered by general demurrer and general denial, except as to the

plaintiff's residence, his ownership of the mules, and in these connections answered that, not having sufficient information, it neither affirmed nor denied; admitted that it was a railroad corporation, and that it owned and operated a line of railroad through Orange county, Tex.; denied specially that it negligently permitted its right of way at the place where the mules were killed to become unfenced, and to be unfenced at the time the mules were killed; denied specially that it negligently and carelessly ran its engine and cars against and over the mules, as alleged by plaintiff; and denied specially that it was indebted and liable to the plaintiff for damages, in the sum of $975. The case was tried in the county court of Orange county on the 20th day of January, 1915, resulting in a verdict and judgment in favor of the plaintiff in the sum of $212.50 each for the value of the three mules killed.

The case was submitted to the jury by the trial court on special issues, substantially as follows:

Was the plaintiff the owner of the mules killed at the time they were killed?

Were the mules killed at the time and place alleged?

Did the railroad company negligently permit its right of way to become unfenced, as alleged, so as to permit stock to come upon the right of way?

Did the railroad company negligently and carelessly run its engine and cars on and against plaintiff's mules, wounding and killing them, as alleged?

What was the reasonable value of each of the mules killed?

The jury answered the special issues, finding appellee, Turner, to be the owner of the mules at the time they were killed; that the mules were killed at the time and place alleged; that the railroad company was negligent in permitting its right of way fence to be out of repair at the time and place the mules were killed, as alleged, and that it negligently and carelessly ran its engine and cars against and upon the mules and killed them, as alleged; and that the value of each mule killed was $212.50.

Appellant requested a special charge, instructing the jury to return a verdict for the defendant; also a special charge, instructing the jury that the burden of proof was upon appellant to establish the negligence of appellant in the maintenance of its right of way fence, and defining negligence, designated as "special charge No. 1." It also asked several special issues, which were given by the court to the jury, embodying, substantially, the following:

Had the right of way fence been down a sufficient length of time that a person of ordinary care should have repaired it (defining ordinary care)?

Did the private fence of the Higgins Oil Company substantially take the place of the defendant's right of way fence?

Was the breach in the fence permitted to exist for the benefit of George Harmon, who was using the mules at the time they were killed?

What was the market value of the mules killed at the time and place they were killed?

What was the age of each mule killed?

The jury answered that the right of way fence had been down a sufficient time that a person of ordinary care should have repaired it.

The record does not show whether the court gave appellant's requested charge No. 1, but no error is assigned, and we suppose it was given, that the Higgins Oil Company fence did not take the place of the right of way fence; that the breach in the fence was not permitted to exist for the benefit of George Harmon, but that he did use it in hauling timbers upon the right of way; that the market value of the mules killed was $212.50 each; and that the age of each mule was nine years.

[1] Appellant assigns 11 errors in his brief, substantially, that the court erred in not instructing a verdict for it; that the verdict of the jury was contrary to the vast preponderance of the evidence, and not supported by the evidence, stated from different viewpoints; that the evidence was not sufficient to warrant the value of the mules as found by the jury; that the court erred in not submitting its special issue No. 6, this special requested issue instructing the jury to find when the mules became the property of George Harmon; that the court should have permitted the jury to take with it in its retirement the owners' stock claim signed by George Harmon, the statement made by Jerome Turner, and the plat drawn by the witness, A. Long. This is the eleventh and last assignment by appellant, and is abandoned by it, except as to the statement made by Turner to the railroad claim agent, S. M. Gordon. Hence we do not incumber the case with the other written statement, or documentary testimony. The statement of Mr. Turner is as follows:

"T. N. 2025, Orange Co. 10—27—14.

"I live six miles southeast of Terry, Tex. Am a farmer by occupation. About three months ago I sold to George Harmon, who lives four miles west of Orange, four mules for the consideration of $1,100, to be paid on November 1, 1914. Two of these mules were black mare mules, 16½ hands high, weighing 1,250 pounds each, one bay horse mule 16½ hands high, six years old, and weighing 1,250 pounds, one bay horse mule, seven years old, 16½ hands high, weighing 1,250 pounds. The mules I bought during the month of February, 1915, from a dealer in Houston, Tex., his name I do not know; buying mules for the purpose of rice raising, which I did last year, but on account of being unable to get water this year for irrigating purposes, concluded to dispose of the mules. First cost of mules was $450 per span, and freight to Terry was about $33, for the four

head. Mr. George Harmon told me, a short time ago, the mules I had sold him had been killed by a train near Tulane, and two he had purchased from his father. I had seen the two mules he bought from his father, R. M. Harmon, and were mules I considered would have weighed 1,050 pounds each, and I should judge 13½ hands high, and were mules of middle age. Am not posted on mule values now, and therefore cannot state just what the last two mentioned mules were worth. Mr. George Harmon also stated one of his was also injured when the others were killed, but did not state which mule it was. And in conclusion will state that I did not take Harmon's note for the purchase money for these four mules. Merely sold him the mules, and taking only his word when he would pay me, and do not even hold a mortgage on these mules.          [Signed]    Jerome Turner."

It is certain that George Harmon put in his claim to the railroad company for the value of the mules killed, which Mr. Turner is suing for in this suit.

Upon the trial of the case, J. S. Turner, among other things, testified:

"Mr. Gordon first asked me when Mr. Harmon had bought those mules. I said Mr. Harmon hadn't bought those mules; I didn't consider them sold to Mr. Harmon until they were killed; he surely stood good for them for $550 per span should the mules be killed or disabled while in his possession. * * * He asked me again when those mules were to be paid for. I said I didn't sell those mules; he simply merely stood good for them in case the mules were disabled. * * * Mr. Gordon said, 'Have you ever offered those mules for sale?' I said, 'Yes.' I told him I had, and he asked me my reason for selling the mules. I told him to meet my financial obligations. He said 'When are they due?' so I said, 'November 1st.' As to when the mules are to be paid for, I signed no statement or note to that effect; I wasn't ready to. I did not read the statement. I stated my obligations were to be met on November 1st; that was my object for selling the mules. I owned the mules when they were lost. I don't think I made the statement, 'I did not trade Harmon for, or reserve mortgage for, these four mules, but merely sold him the mules by taking only his word as to when he could pay me, and do not even hold a mortgage on those mules,' to Mr. Gordon, not in that way. I stated that I had never held any mortgage or note on the mules. He said, 'That's a great way to do this business.' Considering Mr. Harmon was man enough to live up to his word. Then I did make substantially the statement that I have no mortgage or note. Mr. Gordon asked me, and I did tell him, he was a man of his word; I judged him to be. I don't remember just exactly when I turned these mules over to Mr. Harmon—about two months from the time they were killed. I didn't keep any date. He was paying me for the hire of these mules $25 per month, straight time, and feed. He hasn't paid me anything. He was to pay me $25 per pair for the entire bunch of mules; I don't know as there was anything further said about any later pay. He was to pay me for them until he got his wood contract up; there was no specified time. If he had paid me that $25 per month each month until he had fully paid the purchase price of $275 in case they were not killed or disabled, they would have been my mules. Mr. Gordon did not show me the statement that Mr. Harmon made. I don't remember whether he made the statement to me that Mr. Harmon had stated to him that he (Harmon) was the owner of the six mules killed by the train on the Texas & New Orleans right of way track. He did tell me that Mr. Harmon had in a claim for the value of those mules. * * * It was understood between me and Mr. Harmon that he was

to feed the mules and pay me $25 per pair per month for them, and if the mules were killed and destroyed during the time he was to pay me for the mules at a stated bargain. My agreement with Mr. Harmon was that if these mules were killed, he was to pay me $275, and they were to be his mules; yes, sir, that was the price agreed upon."

George Harmon testified substantially, as to his trade with Turner, as Turner testified.

The testimony is in sharp conflict as to the ownership of the mules at the time they were killed; and therefore it would have been error for the court to have instructed a verdict in accordance with appellant's special charge No. 1, and appellant's first assignment of error is overruled.

[2] Appellant's second, third, and fourth assignments of error are each to the effect that the verdict of the jury is not warranted by the evidence as to ownership of the mules; that the evidence is not sufficient to support the finding of the jury; that the vast preponderance of the evidence is contrary to the finding of the jury, and are disposed of under one head. There being conflict in the evidence on this issue, and the jury having answered the same, it is not the province of this court to disturb its finding. The second, third, and fourth assignments are overruled.

The fifth, sixth and seventh assignments of error are abandoned by the appellant.

Appellant's eighth and ninth assignments are properly grouped in its brief in one assignment, and we so consider them. They are that the verdict of the jury for $212.50 each for the mules killed is not supported by the evidence, and contrary to a vast preponderance of the evidence. The evidence is conflicting as to the value of the mules. The jury found their value, under proper issues submitted to it, and it is not the province of this court to disturb such finding, and appellant's eighth and ninth assignments are overruled.

[3] The tenth assignment is:

"The court erred, to the prejudice of the defendant, in refusing to submit to the jury special issue No. 6, requested by defendant."

Special issue No. 6, asked by appellant, reads as follows:

"Gentlemen of the jury, when, under the agreement between plaintiff and George Harmon, were the mules sued for to become the property of said George Harmon? Answer this question in your own language, and write your answer on the back hereof."

It would have been error for the court to have given this special requested issue to the jury. It assumed a sale, and required the jury to find a sale, indirectly.

The tenth assignment is overruled.

[4, 5] The eleventh assignment of error is fatal, and requires a reversal of this case. Article 1957, Vernon's Sayles' Civil Statutes, provides:

"The jury may take with them in their retirement the charges and instructions in the cause, the pleadings and any written evidence, except the depositions of the witness. * * *"

[6] Before the plaintiff could recover in this case, he had to establish the ownership of the mules and show, by a preponderance of the testimony, that he was the owner of the mules at the time they were killed. In his written statement he said positively that he had sold the mules to Harmon for $275 each, and that he had made this sale about three months before the mules were killed. Appellant insisted upon that written statement being delivered to the jury for their consideration in their retirement. It was proper matter for the jury to take with them, in their retirement, as when appellant's counsel made the request that the jury should take such statement, the court refused this statutory right. The only answer made by appellee to this proposition is that the error committed by the court is harmless error. It is difficult, sometimes, to say just what constitutes harmless error, but we are soundly of the opinion that in this case it could not be considered harmless error. The burden was upon appellee, Turner, to establish the property as his own before he could recover. His written statement and his oral testimony are in conflict with each other. Can it be said that the jury would have rendered the same verdict, as to the ownership of the mules, it did render if it had been permitted to take Mr. Turner's written statement with it, to consider in its retirement. We cannot say whether such would have been the case. The right is statutory, appellant insisted upon this right, and it was refused by the honorable trial court, and for the error committed the case must be reversed and remanded. In addition to the statute above cited, see S. A. & A. P. Ry. Co. v. Barnett, 12 Tex. Civ. App. 321, 34 S. W. 129; Sargent v. Lawrence, 16 Tex. Civ. App. 540, 40 S. W. 1075; Davis v. M., K. & T. Ry. Co., 17 Tex. Civ. App. 199, 43 S. W. 44; Biard & Squares v. Tyler Building & Loan Ass'n, 147 S. W. 1168; Curtsinger v. McGown, 149 S. W. 303.

Reversed and remanded.

### On Motion for Rehearing.

[7] Appellee's counsel ardently insists that we have committed error in reversing and remanding this case, on the ground that the trial court refused to permit the jury to take with them in their retirement certain evidence, and cites with confidence rule 62a (149 S. W. x), governing the Courts of Civil Appeals, and the following authorities under said rule: T. & B. V. R. R. Co. v. Voss, 160 S. W. 663; So. Kans. Ry. Co. v. Shinn, 153 S. W. 640; I. & G. N. Ry. Co. v. Walters, 165 S. W. 525; Owens v. State Bank of Bronte, 165 S. W. 798. The last citation is an error. We have carefully read all of the authorities cited, but we fail to find such authorities supporting appellee's contention, and, so far as we have been able to ascertain, there is no decision by any of the appellate courts of this state which holds that

a plain violation of a statutory right is harmless error; indeed, we think the authorities cited are rather against appellee's contention than supporting it. A quotation from, perhaps, the strongest authority presented by appellee in his motion for rehearing will prove this view. In the case of Southern Kansas Railway Company of Texas et al. v. Shinn, 153 S. W. 640, it is to be noted that the appellate court, in passing upon motion for rehearing, used the following language:

"Of course, in no event would this court apply the right where a plain and palpable error had been committed in violation of a statute affecting the substantive rights of a litigant; and, where such a condition is presented, the fundamental law necessarily would overcome the rule" (citing Schuette v. Bishop, 153 S. W. 377).

We think the trial court could have, with as much propriety, refused the jury the privilege of taking with them, in their retirement, the charge of the court, or the pleadings of the parties, or, as to that matter, both. The statute is plain and unmistakable that the documentary evidence was proper matter for the jury to have in its retirement. The appellant asked that the jury be permitted to take such evidence with it in its retirement. The trial court refused appellant's request, and did not permit the jury to take with it, in its retirement, a paper that the plain letter of the law says it may have.

The ownership of the mules was a closely contested issue in this case. George Harmon, at the very time of the trial, had a claim pending for damages for these very mules. Such being the case, we are unable to see any force in appellee's contention that the error was harmless.

The motion for rehearing is overruled.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Rehearing denied.