### NEMIR v. BENNETT et al. (No. 9696.)

(Court of Civil Appeals of Texas. Fort Worth. Nov. 26, 1921. Rehearing Denied Jan. 7, 1922. Writ of Error Dismissed for Want of Jurisdiction March 1, 1922.)

**1. Appeal and error ⚌653(3)—Where copy of statement of fact filed in Court of Civil Appeals bore no indorsement of filing in lower court, other copy duly filed ordered substituted.**

Where plaintiff in error filed in the Court of Civil Appeals a statement of facts agreed to by counsel for both parties and approved by the trial court, but not bearing indorsement of filing in lower court, and subsequently filed with the district clerk a copy of the statement of facts, the plaintiff in error's motion to require the clerk of the Court of Civil Appeals to file the copy filed in the district clerk's office as of the date when filed in the district clerk's office and return the copy filed in the Court of Civil Appeals to the district clerk to be filed as of such date will be granted, in view of Rev. St. arts. 2068, 2070.

**2. Brokers ⚌85(6)—Testimony of conversation held admissible on issue of authority to employ subagents.**

In an action for commission for a sale, involving an issue as to whether the broker with whom the defendant had contracted had been authorized to employ subagents by an agreement collateral to the written contract, tes-

timony as to conversation between defendant and such broker with reference to defendant's desire to sell and as to a prior contract between them *held* admissible on issue as to brokers' right to employ subagents.

**3. Evidence �köm441(6)—Parol testimony as to agreement collateral to written contract held admissible.**

In brokers' action for commission, parol testimony as to agreement entitling broker to employ subagents, collateral to the written brokerage contract, *held* admissible.

**4. Brokers �köm86(1)—Agreement collateral to written contract entitling broker to employ subagents need not be shown by express proof.**

An agreement collateral to a brokerage contract entitling broker to employ subagents need not be shown by express proof.

**5. Brokers �köm55(1)—Owner who authorized broker to employ subagents bound by subagents' contracts.**

A broker cannot ordinarily delegate his authority to a subagent except as to the performance of clerical duties, but if there was an expressed or implied agreement authorizing a broker to employ subagents, the owner will be bound by contracts entered into by subagents when within the terms of sale agreed on between the owner and broker.

**6. Brokers �köm55(1)—Sale by subagent contemplated where broker lived in other state.**

Where an agent employed to sell land situated within the state resides in another state, it is a fair presumption that a sale by a subagent is contemplated.

**7. Brokers �köm86(1)—Evidence held to prove owner employed broker to sell interest in royalty under oil and gas lease.**

Evidence *held* to prove that owner employed broker to sell a one-half interest in a one-eighth royalty under an oil and gas lease on two tracts of land.

**8. Brokers �köm86(1)—Evidence held to prove broker's authority to employ subagents.**

Evidence *held* to prove that broker was authorized to employ subagents.

**9. Brokers �köm86(4)—Evidence held to prove brokers procured purchaser before owner's sale to others.**

Evidence *held* to prove that brokers procured purchaser before owner's sale to others.

Error from District Court, Nolan County; W. P. Leslie, Judge.

Action by H. D. Bennett and others against A. Nemir. Judgment for plaintiffs, and defendant brings error. Affirmed.

George T. Wilson, of Breckenridge, and James Spiller, of Sweetwater, for plaintiff in error.

J. H. Beall, Ellis Douthit, and Harry R. Bondies, all of Sweetwater, for defendants in error.

BUCK, J. In this case plaintiff in error filed in this court on February 16, 1921, a statement of facts agreed to by counsel for both sides, and approved by the trial judge. On February 22, 1921, he filed in the district clerk's office another copy of the statement of facts, also agreed to by counsel and approved by the trial judge. The district clerk made affidavit that these two copies of the statement of facts were identical in wording. Article 2068, of our Civil Statutes, provides:

"After the trial of any cause, either party may make out a written statement of the facts given in evidence on the trial, and submit the same to the opposite party, or his attorney, for inspection. If the parties, or their attorneys, agree upon such statement of facts, they shall sign the same; and it shall then be submitted to the judge, who shall, if he find it correct, approve and sign it; and the same shall be filed with the clerk."

Article 2070 of the Statutes provides:

"Upon the filing in the office of the clerk of the court by the official shorthand reporter of his transcript as provided in section 5 of this act, the party appealing shall prepare or cause to be prepared from the transcript filed by the official shorthand reporter, * * * a statement of facts, in duplicate, which shall consist of the evidence adduced upon the trial, both oral and by deposition. * * * But the same shall, when agreed to by the parties and approved by the judge, * * * be filed in duplicate with the clerk of the court, and the original thereof shall be sent up as a part of the record in the cause on appeal."

[1] Plaintiff in error has filed a motion calling attention to the fact that the copy of the statement of facts filed in this court fails to bear the indorsement of the filing in the district clerk's office, and that such "is an omission or inadvertence on the part of the clerk of the lower court." Wherefore he prays that the court consider the statement of facts as if it bore the indorsement that it was filed in the office of the clerk of the trial court in due time, as required by law, or that the court accept the statement of facts filed in the district clerk's office and permit it to be filed in this court, and the copy filed in this court be returned to the district clerk's office to be filed there. We conclude that the motion of the plaintiff in error should be granted, and the clerk of this court will file the copy of the statement of facts filed in the district clerk's office, as of date February 22, 1921, and return the copy filed in this court to the district clerk, to be filed by him as of date February 22, 1921. Inasmuch as the two copies of the statement of facts before us appear to be identical, and inasmuch as both are agreed to by the counsel and approved by the trial judge, we think that justice demands that plaintiff in error be granted the relief prayed

---

�köm For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

for. Though we find no decision directly in point, there are several cases, such as Railway Co. v. Prazak (Tex. Civ. App.) 170 S. W. 859, McLane v. Haydon (Tex. Civ. App.) 178 S. W. 1197, Fort Worth Pub. Co. v. Armstrong (Tex. Civ. App.) 175 S. W. 1113, and Galaviz v. State, 82 Tex. Cr. R. 377, 198 S. W. 946, which, in effect, support the conclusion here reached.

H. R. Bondies, H. D. Bennett, and J. T. Johnson sued A. Nemir for commission alleged to be due the plaintiffs for securing a purchaser for an undivided one-half interest in the one-eighth royalty, under an oil and gas lease on 265 acres of land in Stephens county. They alleged that defendant employed Bondies to secure a purchaser for the one-half of the one-eighth royalty for $125 per acre, and, if Bondies should sell it for a price in excess of $135 an acre, then the plaintiff and defendant were to divide such excess equally. Plaintiffs also alleged that Bondies, under the contract with defendant, was authorized to associate with him others in an effort to make a sale of the said interest in the royalty; that Bondies associated with himself the other plaintiffs, and on the 21st day of January, 1919, plaintiffs procured A. H. Bowers as a purchaser of the one-half of the one-eighth royalty at $150 per acre cash; that said Bowers was ready, willing, and able to purchase said interest; but that defendant, when advised that a purchaser had been secured, in violation of the terms of his contract, refused to carry the same out and refused to pay Bondies the commission he had earned. Plaintiff sought judgment in the sum of $4,637.50.

Defendant replied by way of general demurrer, certain special exceptions, a general denial, and specially denied that it was understood that he had directly or by implication authorized Bondies to associate others with him in an effort to make sale of the said interest in the land and royalty, and denied that he knew anything of such desire on the part of said Bondies. He further denied that Bondies had procured a purchaser at $150 per acre, or for any other amount, and alleged that if said purchaser was procured by said Bondies, he was not ready, willing, and able to purchase said interest. Defendant further alleged that subsequent to the execution of the original contract between himself and Bondies the time within which such sale should be made by the plaintiff Bondies was extended, and it was agreed that, if the plaintiff Bondies procured a prospective purchaser, the sale of said property was to be made on the terms agreed upon after said purchaser was found, and that this part of the contract Bondies made no attempt to fulfill. Defendant further alleged that under his contract with Bondies he reserved to himself the right to sell said property, and did sell the same.

Plaintiffs recovered judgment for the amount sued for, and the defendant has appealed.

There are 37 assignments in plaintiff in error's petition, but we do not think it necessary for us to discuss each of them. The evidence shows that in September, 1918, the defendant was in the office of plaintiff Bondies, a lawyer living at Sweetwater, and that he told Bondies that he had two tracts of 265 acres each in Stephens county upon which he had given an oil and gas lease, and that he wanted to sell one-half of the one-eighth royalty retained by him. He urged Bondies to try to sell it for him, but at that time Bondies did not accept his offer of employment. About January 3, 1919, Bondies and Joe Booth went down to Roscoe, where defendant was engaged in business, and the defendant entered into the following written agreement:

"Roscoe, Tex., Jan. 3, 1919.

"H. R. Bondies: Referring to two tracts owned by me in Stephens Co., Tex., being surveys Nos. 2068 and 2069, of 265 acres each, will sell ⅛ of my ⅛ royalty retained thereon or any less part thereof on a basis of $150.00 per a. ½ of such royalty, and pay you a commission of 10%; or you may sell such ½ or less part of ⅛ at any higher price you can obtain and pay me on the basis of $125.00 for ½ of such ⅛ and retain the balance as your compensation.                    A. Nemir."

Bondies testified that defendant knew that Joe Booth was working with him in the effort to sell the interest in the royalty. After receiving the written authority to sell the interest in the royalty, Bondies and Booth went to Ranger, Eastland county, and talked with a number of people, and associated with them C. E. Jones, of that place. Booth went on to San Antonio, Jones to Fort Worth, and Bondies to Dallas and Fort Worth, and Bondies tried other agents at both Dallas and Fort Worth and advertised in a daily paper in Fort Worth. It will be noted that the contract does not state the length of time the contract of brokerage should last, but plaintiff testified that by a verbal agreement it was understood between him and the defendant that it should stand for two weeks. Defendant told Bondies that he had the authority to insert 10 days as the time the contract should run. Later on he extended the time to January 16th. On January 17th the defendant executed the following contract of brokerage:

"January 17, 1919.

"Harry R. Bondies: Referring to two tracts owned by me in Stephens county, Texas, being surveys 2068 and 2069, of 265 acres each, I will, as to either or both, sell ½ of my ⅛ royalty retained thereon or any less part thereof on a basis of $125.00 for a ½ of such royalty net, or you may sell such ½ or less part of said ⅛ royalty at any higher price you can obtain and pay me on the basis of $125.00 for ½ of such ⅛ royalty and retain the balance as your commission. This is to hold good for ten

more days following the above date. During that time I reserve the right to sell myself, but will not place it with any other agent.

"A. Nemir."

On January 19th the defendant telephoned Bondies that he was going out and try to sell the stuff himself at $125 an acre. Bondies urged him not to do so and told him that he would do all he could to effect a sale. Bondies then went down to Roscoe to see the defendant, and Bondies testified that in that conversation it was agreed between them that defendant would not go out of Roscoe in order to make a sale, and that if he sold it in his store that he would ask nothing less than $135 an acre; that, if Bondies sold for more than $135 an acre, he was to make an equal division of the excess over and above the $135 with defendant. Bondies and defendant entered into the following contract:

"Roscoe, Tex., 1/20/19.

"Referring to sale contract of royalties as to secs. 2068 and 2069 in Stephens county, Texas, it is agreed between A. Nemir and H. R. Bondies that during the time of said contract neither shall offer said ½ royalty at any less or greater figure than $135.00 without the consent of the other, and if Bondies should, with the consent of Nemir, sell for more than $135.00, it shall be upon terms then to be agreed upon,

"A. Nemir.
"H. R. Bondies."

Bondies then made several other trips, including one to Ranger. At the latter place he enlisted the help of Bennett and Johnson in the effort to effect the sale. Bondies and defendant had agreed that in case either one should effect a sale of the interest in the royalty he should notify the other's wife, inasmuch as the principals to the contract were likely to be away from home. About 3 p. m., January 21, 1919, Johnson and Bennett sold one-half of the royalty in survey No. 2069, composed of 265 acres, for $150 an acre. A. H. Bowers was the purchaser, and put up $5,000 earnest money to bind the deal, and Johnson and Bennett entered into a contract of sale with him, they signing it as if they owned the royalty. Johnson and Bennett tried at once to get in communication with Bondies over long distance, and on January 22, 1919, Bennett and Johnson wired Bondies as follows:

"Ranger, Texas, January 22, 1919.

"H. R. Bondies, Sweetwater, Texas: We will take the one-half royalty on two hundred sixty-five acres survey number twenty sixty-nine Stephens county that you give us contract on yesterday. Wire us confirmation and come to Ranger at once.  Bennett and Johnson."

This telegram was received by Mrs. Bondies about 3:30 or 4 p. m., though an effort was made to communicate it to her earlier in the day. She immediately called up the defendant at Roscoe over long distance and communicated to him the contents of the telegram. Defendant told her that he thought he had closed a sale. H. C. Davenport, of Breckenridge, had talked to defendant over long-distance telephone about 8 p. m. January 21st. As to this conversation, the defendant testified as follows:

"After this last contract was signed on the 20th day of January, 1919, I wired him. I sold it. Mr. Davenport of Breckenridge called me over the phone in the afternoon and asked me what I will take and how much I wanted to sell, and I told him I wouldn't take less than $75 an acre for a fourth. He says, 'Well, I will take it.' That was on January 21st. I was at Roscoe, and he was calling me there. I told him that I would be in Breckenridge to-morrow, and then I wired Mr. Black, authorizing him to accept the forfeit, and the deal was closed. Mr. Jack Black was vice president of the First National Bank and I was acquainted with him, and I told him to act as my agent and accept the forfeit. The agreement I made was direct with Mr. Davenport, and the understanding I had with Davenport was that he put his forfeit there and Mr. Black wire me that the forfeit was there, and Mr. Black wired me; that is the bank did."

On January 22d the defendant sent the following telegram to plaintiff Bondies:

"Roscoe, Texas, January 21 (22?), 1919.

"Harry Bondies, Sweetwater, Texas: Royalty Stephens county land sold, deal not through advise later.  A. Nemir."

Subsequently the defendant went over to Breckenridge and completed the sale with Davenport of the one-fourth royalty on survey 2069 at $75 an acre. He says on the 23d of January. The plaintiff then filed suit. A trial was had upon special issues, in answer to which the jury found:

(1) That the defendant employed Bondies to procure a purchaser for one-half of the one-eighth royalty in surveys 2068 and 2069, or in either of them, in Stephens county, Tex., at a net price of $125 per acre, with the understanding that the said Bondies was to retain as his commission all over and above the $125 per acre that he could sell said interest for.

(2) That there was a subsequent understanding between Bondies and defendant that any amount over $125 per acre that said Bondies might sell said royalty for would be divided equally between Bondies and defendant.

(3) That it was understood and agreed between Bondies and Nemir at the time of making such contract that the said Bondies would associate with him other persons in an effort to make sale of said part royalty.

(4) That Bondies did employ and procure the services and assistance of plaintiffs Bennett and Johnson in an effort to make the sale.

(5) That said Bennett and Johnson did procure on January 21, 1919, a purchaser,

in A. H. Bowers, who was ready, willing, and able to purchase said part royalty in said section No. 2069 at the price of $150 per acre cash.

(6) That plaintiffs procured a purchaser prior to the time that defendant closed a sale for the portion of the royalty sold to Davenport.

(7) That defendant, after being apprised of said sale to Bowers, refused to carry out the same.

The judgment for plaintiffs for the amount sued for was entered upon this verdict, and the defendant has appealed.

[2] Plaintiff in error, who will hereinafter be styled defendant, complains of the action of the court in admitting the testimony of the plaintiff Bondies as to a conversation had in his office between him and the defendant September, 1918, with reference to defendant's desire to sell an interest in his royalty, and testimony as to the first written contract, of date January 3, 1919. While we do not think this evidence was essential, yet it was probably admitted by the court as being introductory of the contract of January 17th and January 20th, upon which plaintiffs filed suit. Facts whose existence is a necessary preliminary to the relevancy of evidence are admissible. So also facts which are otherwise irrelevant may be admissible because, by explaining or unfolding a situation, they establish the relevancy of evidence, or because they explain or render more certain and definite the evidence which has already been given, or substantiate an inference which might be drawn therefrom. 22 C. J. p. 165, and authorities there cited. Under this rule we do not think any reversible error was committed by the introduction of this testimony. Defendant excepted to the pleadings to the effect that plaintiff understood and agreed with Bondies that he might employ or secure the assistance of brokers and agents in order to effect the sale of the interest in the royalty, and also excepted to the testimony tending to prove such employment, and the testimony as to the contract made by Bennett and Johnson with A. H. Bowers for the sale of the one-half interest in the one-eighth royalty, and the telegram sent by Bennett and Johnson to Bondies. This question of fact was submitted to the jury, and they found that it was understood and agreed between Bondies and defendant, at the time of the making of the contract under discussion, that Bondies should associate himself with other persons in the effort to make the sale of said royalty. One circumstance tending to show that this was true is that Bondies was a lawyer, and therefore probably not in touch with buyers of royalties, and that in the prompt performance of his duties as an agent it would be necessary for him to associate with him those more closely in touch with the oil market and trade. No exception, by way of plea of mis-

joinder, was made in the defendant's answer to the presence in the suit as plaintiffs of Bennett and Johnson; hence, Bennett and Johnson being parties to the suit, without objection from defendant, we do not think any reversible error is shown by reason of the introduction of this testimony.

[3, 4] The agreement that subagents might be employed or secured was collateral to the written contract sued upon, and did not vary or contradict the terms of that contract. If the employment of subagents was contemplated by the parties at the time of the creation of the agent's authority, or if it was then expected that subagents might or would be employed, this would be treated as at least implied authority for such employment. The fact that the employment of subagents was contemplated by the parties need not be shown by express proof. 1 Mechem on Agency (2d Ed.) p. 236.

[5, 6] While ordinarily a broker cannot delegate his authority to a subagent, except the performance of clerical duties, etc., yet, if the circumstances and evidence sustain the conclusion that in a particular instance it was understood by the parties that the broker should have such authority or that there was an expressed or implied permission of the employer that the broker should have such authority, the employer will be bound by contracts entered into by the subagents, when within the terms of sale agreed upon between the employer and broker. Where an agent employed to sell land situated in this state resides in another state, it is a fair presumption that a sale by a subagent is contemplated. Eastland v. Maney, 36 Tex. Civ. App. 147, 81 S. W. 574; Wright v. Isaacks, 43 Tex. Civ. App. 223, 95 S. W. 55. We conclude that in this case the same rule will apply, and all the assignments presenting the question of the employing of subagents are overruled.

[7-9] We think the evidence, whose admissibility is unquestioned, or upon which we have already passed, proves conclusively the following facts: (1) That defendant did employ plaintiff Bondies to sell a one-half interest in the one-eighth royalty on the two tracts of land.

(2) That it was understood between them that Bondies in making the sale could enlist the help of others, brokers and agents.

(3) That Bennett and Johnson, who had been secured by Bondies to help him in making the sale, sold one-half of the royalty to A. H. Bowers, who was ready, willing, and able to buy, about 3 o'clock p. m. on the 21st of January, about five hours before Davenport talked to Nemir over the telephone, who only agreed to buy one-fourth of the royalty; that Bennett and Johnson entered into a written contract at the time with Bowers to sell him the interest in the royalty, and seasonably notified Bondies of this sale; that Mrs. Bondies, on the afternoon of the 22d of January, notified defendant of this sale;

that at the time of this notification defendant had not closed the deal for the sale of the one-fourth of the royalty to Davenport, though he had verbally agreed to sell it to him, provided Davenport should put up in the bank the forfeit.

(4) That, if defendant felt morally bound to carry to a determination the sale to Davenport, he could have done so, as he owned one-half of the royalty in addition to the one-half sold by Bennett and Johnson to Bowers.

Hence we conclude, irrespective of the admissibility of certain evidence introduced by plaintiffs, such as is assailed in the tenth and the eleventh assignments, the court could have given a peremptory instruction for plaintiffs, at least for the commission on the sale of one-fourth of the royalty. No question is presented as to the excessiveness of the verdict. Hence defendant is not in position to complain that the judgment is excessive.

We have examined all the assignments, and overrule all of them, and affirm the judgment below.