### J. WRIGHT v. L. A. ISAACKS ET AL.

Decided May 15, 1906.

**1.—Mistake in Deed—Description—Agent—Sub-agent.**

A resident of another State owned a number of lots in a town in Texas; for the sale of said lots she appointed as her agent a party who did not live in said town and who, she must have known, could not give his personal attention to all the details in making sales; said agent, without express authority from the owner, appointed a local sub-agent to perform such merely ministerial acts as pointing out on the ground the lots to be sold; receiving offers to purchase and transmitting the same to the agent; and informing purchasers as to the proper description by number on the map of the town of the lots pointed out. Held, the power of the agent to delegate to the sub-agent the performance of such acts could be implied from his own agency; the acts of the sub-agent would be binding on the principal, and the mistake of the sub-agent in the description of a lot sold and conveyed by the principal would be held the mistake of the principal.

**2.—Same—Limitation.**

Against the right to correct a mistake in the description of land in a deed limitation will begin to run from the time the mistake was actually discovered, or from such time as by the exercise of reasonable care and diligence it might have been discovered. This is ordinarily a question of fact for the jury.

**3.—Deed—Parol Sale.**

Where by mistake in the description in a deed an entirely different tract of land is conveyed from the one actually bargained for and intended to be conveyed the transaction can not be treated as a parol sale of the land intended to be purchased.

ON REHEARING.

**4.—Deed—Misdescription—Equitable Rights.**

If a purchaser goes into possession of land bargained for and intended to be purchased, pays the purchase money and makes valuable improvements upon the faith of his contract, his right in equity to claim the benefit of such parol contract of sale will not be affected by the fact that a deed was executed which by mistake conveyed an entirely different tract of land.

Appeal from the District Court of Liberty County. Tried below before Hon. L. B. Hightower.

*Nugent & Foster* and *H. E. Marshall,* for appellant.—The court erred

in holding that Tom Peebles was not the agent of Mrs. Jemison to designate, point out and put parties into the possession of the property she sold at Cleveland, Texas. Insurance Co. of North America v. Thornton, 89 Am. St. Rep., 30 (13 Ala., 222); McKinnon v. Vollmar, 17 Am. St. Rep., 178 (75 Wis., 82); Williams v. Moore, 24 Texas Civ. App., 404; Renwick v. Bancroft, 56 Iowa, 527; Barnes v. Downes, 2 Texas App. Civil Cases, 474; Bradstreet v. Gill, 72 Texas, 115-117; Missouri, K.& T. R. R. Co. v. McMadden Bros., 89 Texas, 139.

The court erred in refusing to charge the jury on the law as applicable to oral sale, because the uncontroverted facts show that such oral sale was made by Mrs. Jamison to C. C. Cherry, and by Cherry to plaintiff, of lots Nos. five and six in block No. five (5), and that Cherry was put in actual possession of same, and that Cherry put plaintiff in the actual possession of same, and plaintiff is now in possession of same. Castleman v. Sherry, 42 Texas, 61, 62; Ponce v. McWhorter, 50 Texas, 571; Willis v. Matthews, 46 Texas, 483; Murphy v. Stell, 43 Texas, 133; Harold v. Sumner, 78 Texas, 581.

The court erred in holding that plaintiff's suit was barred by the statute of limitation of two or of four years, because in cases of mutual mistake, as in this case, limitation begins to run only from the discovery of the mistake, or when it ought to have been discovered; and when it ought to have been discovered, or when it has been discovered, are questions for the jury. Oldham v. Medearis, 90 Texas, 506; Emerson v. Navarro, 31 Texas, 341; Gould v. Emerson, 39 Am. St. Rep., 501; Stone v. Hale, 52 Am. Dec., 185.

*Stevens & Pickett,* for appellees.—An agent who has been authorized to sell land has no power to verbally appoint a subagent to sell the same, and the acts of such subagent in reference to the land do not bind the principal. Tynan v. Dullnig, 25 S. W. Rep., 465; Smith v. Sublett, 28 Texas, 169.

The same parties in the very same transaction can not convey the same land, both by deed, and at the same time by parol sale of the land involved in the one identical transaction. Chicago, T. & M. C. Ry. Co. v. Titterington, 84 Texas, 225.

To constitute a contract it is absolutely essential that the minds of both parties meet, and also there can be no correction of a mistake entirely unilateral, but the mistake must be mutual to be entitled to correction. May v. San Antonio & A. P. Townsite Co., 83 Texas, 505.

The court was correct in instructing a verdict for the defendants, for the reason that the cause of action, if any plaintiff ever had, was barred by the statute of limitations of four years, as the same was a suit to correct a mistake in a deed, which mistake could, by the use of ordinary and reasonable diligence, have been ascertained more than four years before the institution of this suit. Bremond v. McLean, 45 Texas, 10; Ransom v. Bearden, 50 Texas, 120; Kuhlman v. Baker, 50 Texas, 636; Calhoun v. Burton, 64 Texas, 515; Bass v. James, 83 Texas, 110; Cooper v. Lee, 75 Texas, 123; Cohn v. Shwarts, 32 S. W. Rep., 820; Vodrie v. Tynan, 57 S. W. Rep., 681; Boren v. Boren, 12 Texas Ct. Rep., 170; Oldham v. Medearis, 90 Texas, 508; Rowe v. Horton, 65 Texas, 90.

REESE, ASSOCIATE JUSTICE.—J. Wright brought this suit against L. A. Isaacks, Wm. Morris and Mrs. Louisa A. Jemison to recover lots 5 and 6 in block 5 in the town of Cleveland, and to correct a certain deed executed by Mrs. Jemison to C. C. Cherry, and also a deed from Cherry to himself for lots 5 and 6 in block 8 in said town, which said deeds, it is alleged, were intended to convey lots 5 and 6 in block 5, but by mistake in the description of the property really sold by Mrs. Jemison to Cherry and by Cherry to plaintiff, described said property as lots 5 and 6 in block 8. Plaintiff also sought to cancel a certain deed from Mrs. Jemison to Wm. Morris and also a deed from Morris to L. A. Isaacks for said lots 5 and 6 in block 5, and to remove cloud, etc.

The trial court instructed the jury to return a verdict for defendants and, motion for new trial being overruled, plaintiff Wright appeals.

The lots in question belonged to Mrs. Louisa A. Jemison, who lived in Alabama, but who had appointed N. S. Meldrum, who lived in the city of Houston, her agent for the sale of the lots. Meldrum was general manager of the Houston, East & West Texas Railroad. Mrs. Jemison owned a great many lots in the town of Cleveland, and Tom Peebles, who was the local agent of said railroad company at Cleveland, had been authorized by Meldrum to attend to the sale of the lots, advising Meldrum when such sales were made, whereupon Meldrum would procure deeds from Mrs. Jemison and send the same to Peebles who would deliver the same to the purchasers and collect the purchase money. These lots were in the woods and unmarked in any way. The town was very small, containing about 75 inhabitants, and the town tract was densely overgrown with trees and bushes.

In September, 1896, C. C. Cherry desiring to purchase two lots in the town located at a certain place, applied to Peebles and pointed out the lots he wanted. Peebles went out and showed Cherry the lines of the lots which were in fact, according to a map of the town in Peebles office, lots 5 and 6 in block 5. The price of the lots was $25 each, and Cherry paid Peebles $5 each as earnest money. Peebles then reported the sale to Meldrum, who reported to Mrs. Jemison in Alabama, and she executed a deed to Cherry for the lots describing them as lots 5 and 6 in block 8. Cherry paid the balance on delivery of the deeds. It is not definitely shown how the mistake occurred. Cherry did not notice the mistake, but at once took possession of the lots as selected by him and the lines of which had been shown him by Peebles, and began to clear and improve the same, enclosing the lots with a fence, and planted some trees. Cherry continued in possession of the lots until January, 1900, when he sold them to appellant, conveying them by deed as lots 5 and 6 in block 8. Appellant took possession of lots 5 and 6 in block 5 under this deed, having no notice or knowledge that the deed did not describe the lots bought by him of Cherry. Afterwards in September, 1901, appellant bought, through Wm. Morris, agent of Mrs. Jemison, lots 5 and 6 in block 8, and received a deed from her for the same. In 1902, when he came to render this property for taxes he discovered, for the first time, the mistake in the deed from Cherry to himself and from Mrs. Jemison to Cherry, for the two lots first sold, his attention being called to the fact that he had two deeds for lots 5 and 6 in block 8. He

Vol. XLIII. Civil—15.

then applied to Morris, who was the agent of Mrs. Jemison, to have the first deed corrected and left the deed with him for that purpose, as testified by appellant, but Morris instead of doing so procured a deed from Mrs. Jemison to himself for lots 5 and 6 in block 5 in May, 1902, and a few days thereafter sold and conveyed the same to L. A. Isaacks. Both Morris and Isaacks had full knowledge of appellant's claim to these lots. This suit was instituted in July, 1902.

Two propositions are presented by the assignments of error arising upon the evidence, in view of the peremptory instruction to the jury to return a verdict for defendants.

1. Conceding that the mistake in the description of the lots conveyed to C. C. Cherry by Mrs. Jemison was a mutual mistake of Peebles and Cherry and that Peebles intended to sell and Cherry to buy lots 5 and 6 in block 5, was Mrs. Jemison affected by such mistake?

2. If Mrs. Jemison is affected by the mistake, is this action to have the deed corrected barred by the statute of limitations of four years pleaded by defendants?

The evidence shows that Peebles had no authority from Mrs. Jemison to sell the lots. What authority he had was from N. S. Meldrum, the agent of Mrs. Jemison for that purpose. The evidence tends to show that he was authorized by Meldrum to point out to intending purchasers lots they desired to purchase, to receive offers to buy, with the necessary part payment or earnest money, to transmit such offers to Meldrum, advising him of the sale, and to receive from Mrs. Jemison through Meldrum deeds for lots so sold and to deliver the same to the purchasers, collecting the purchase money. In this way he had, as testified by him, sold a great many of the lots, probably as many as one hundred. A map or plat of the town was kept by Peebles in his office, by which the numbers of lots and blocks could be determined. It may be conceded that Peebles had not full authority as an agent of Mrs. Jemison to sell lots, and that Meldrum being an agent of Mrs. Jemison himself for that purpose, could not delegate such authority to Peebles. Meldrum, however, in his capacity of agent could authorize Peebles to perform such merely ministerial acts with regard to the subject matter of his agency as did not involve the exercise of judgment and discretion, such as pointing out the lots to be sold upon the ground, receiving offers to purchase and transmitting the same to Meldrum, and also advising and informing purchasers as to the proper description of lots by numbers on the map of the town when the same were pointed out by him. The power of Meldrum to delegate to Peebles the performance of such acts may be implied from his own agency, and the acts of Peebles under such delegated authority would be binding upon the principal, Mrs. Jemison. (Mechem on Agency, sec. 193; 1 Am. & Eng. Ency. of Law, 978-980; Williams v. Moore, 24 Texas Civ. App., 404; McKinnon v. Vallmar, 17 Am. St. Rep., 178; Renwick v. Bancroft, 56 Iowa, 527.)

When Peebles speaks, in his testimony, of having sold lots for Mrs. Jemison, it must be understood that he was performing such acts as he was authorized to perform in relation to such sale. His act, after the lots were pointed out to Cherry, in examining the map and getting therefrom a proper description of the lots in order that he might advise Meldrum and through him, Mrs. Jemison as to the lots applied for, was

as much a purely ministerial act as the designation of the lots on the ground, and involved the exercise of no more judgment and discretion. To that extent, at least, his acts would be binding upon Mrs. Jemison upon the principle that the appointment of Meldrum as her agent for the sale of the lots carried with it, by implication, the power upon his part to authorize Peebles to perform such acts, in relation to their sale.

The evidence showed that Meldrum was general manager of an important line of railway, with headquarters at some distance from the town where the lots were located, that his time was entirely taken up with the discharge of the duties of this position, and that he was rarely in Cleveland and when there only remained a few minutes at a time. All of this must be presumed to have been known to Mrs. Jemison who must have known that he could not personally act for her in such unimportant matters as were confided by Meldrum to Peebles. For several years Peebles continued to act in this capacity in arranging for the sale of lots, just as was done by him in the present instance, and afterwards he was compensated for just such services as he performed, in relation to the sale to Cherry, by Mrs. Jemison by conveying to him town lots in Cleveland. It is questionable whether the circumstances would not imply the power in Meldrum to delegate to Peebles much larger powers than such as would be necessary to bind Mrs. Jemison by his acts in the matter of the description of the lots sold to Cherry. The authority of an agent is always construed to include the necessary and usual means to execute it properly. (Mechem on Agency, sec. 194; Barnes v. Downes, 2 Texas Civ. App., 474.) It is unreasonable to suppose that it was intended by Mrs. Jemison that Meldrum would undertake personally to do what Peebles did and what was necessary to be done in relation to the sale to Cherry, and she ought not to be allowed now, after having availed herself of his services and received the full benefit thereof, to shelter herself behind the plea that the mistake in the description of the lots in fact bought by Cherry was Peebles' mistake for which she is not responsible. The conclusion is unavoidable that she intended to sell and convey the lots which Peebles had pointed out to Cherry. Peebles' mistake in the matter of the description, however it occurred, is her mistake. This view is further supported by the fact that Mrs. Jemison afterwards sold and conveyed to appellant lots 5 and 6 in block 8, which she had, according to her contention now, previously sold and conveyed, not by mistake but intentionally, to Cherry. The lots were of equal value as shown by the price paid by appellant for the same. The undisputed evidence shows, we think, that both on account of the nature of the act performed by Peebles in relation to the misdescription of the lots in the deed, and on account of the circumstances which rendered it reasonably necessary that Meldrum should employ Peebles in this capacity in making sale of lots, which necessity must have been known to Mrs. Jemison, he acted as her agent in the matter, and she is bound by his act which in some way resulted in the mistake in the description of the lots sold.

Both Morris and Isaacks bought with full notice of appellant's claim herein asserted, and are in no better position to defend the action than their codefendant, Mrs. Jemison.

In regard to the plea of the statute of limitations interposed by ap-

pellees, we think that this issue should have been submitted to the jury. The statute began to run from such time as the mistake in the description of the lots was discovered by appellant or his vendor Cherry, or if it should or might have been sooner discovered by the exercise of reasonable care and diligence, then from the time when it ought to or might have been so discovered. The deed was executed in October, 1896. The evidence shows that the mistake was in fact discovered in April, 1902, and this suit was instituted in July, 1902. If, by the exercise of reasonable care and diligence, the mistake might have been discovered by Cherry more than four years before the institution of this suit, the action would be barred by limitation.

Without discussing the evidence upon this point we think it fairly raises the issue as to whether the action was barred at the date of the institution of the suit, and the issue should have been submitted to the jury under proper instructions. It can not be said as matter of law, from the evidence in the record, that Cherry by the use of reasonable care and diligence would or might have discovered the mistake in his deed more than four years before the institution of this suit.

We can not agree with appellant's contention that the sale can be treated as a parol sale. Unless the deed can be corrected for misdescription of the lots, it must stand as a conveyance of lots 5 and 6 in block 8. Clearly it can not be said that there was a parol sale of lots 5 and 6 in block 5, and growing out of the same transaction a sale evidenced by a deed of lots 5 and 6 in block 8.

For the errors herein pointed out the judgment is reversed and the cause remanded.

### ON REHEARING.

The motion for rehearing filed by appellees is overruled, in which we all concur. Upon further consideration, however, the majority of the court does not agree with the writer, who also wrote the opinion upon the reversal of the judgment, in the following statement in the opinion:

"We can not agree with appellant's contention that the sale can be treated as a parol sale. Unless the deed can be corrected for misdescription of the lots, it must stand as a conveyance of lots 5 and 6 in block 8. Clearly it can not be said that there was a parol sale of lots 5 and 6 in block 5, and growing out of the same transaction a sale evidenced by a deed of lots 5 and 6 in block 8."

It is the opinion of the majority that if Cherry went into possession of lots 5 and 6 in block 5, paid the purchase money and made valuable improvements upon the faith of his contract with Peebles to buy these particular lots, it would not affect his right to claim the benefit of such parol contract of sale in equity, that a deed was executed in pursuance of such contract which, on account of the mistake in the description of the lots was not, in fact, a conveyance of the lots really embraced in such contract.

Appellees contend that the conveyance relied on by appellant is a conveyance of lots 5 and 6 in block 8, and can not be treated as a conveyance of lots 5 and 6 in block 5; that in fact appellant must stand upon it as a conveyance of the former.

This leaves the case, in the opinion of the majority of the court,

resting, so far as lots 5 and 6 in block 5 are concerned, upon the parol contract alone, and entitled appellant to claim all of the benefits which a court of equity would give him from such parol contract; if the other facts and circumstances, such as placing in possession, payment of purchase money, and valuable improvements are such as to authorize such relief. The writer adheres to the opinion, upon this point, as expressed in the main opinion. My view is, in addition to what is said in that opinion, that the possession, payment of purchase money, and improvements were not upon the faith of the parol contract of sale, but upon the faith of the executed conveyance. If appellant has by his own laches lost his remedy of having the deed corrected he must stand upon the deed and can not stand upon the parol contract of sale. (6 Pom. Eq. Juris., sec. 678; Daggett v. Ayer, 65 N. H., 82.)

Nothing that is here said is intended to affect what is said in the opinion with regard to the issue of limitation.

*Reversed and remanded.*

Writ of error dismissed for want of jurisdiction.