## STOWE et al. v. WOOTEN.

No. 829.

Court of Civil Appeals of Texas. Eastland.
April 3, 1931.

Rehearing Denied April 24, 1931.

Kirby, King & Overshiner and York & Camp, all of Abilene, for appellants.

Wagstaff, Harwell, Wagstaff & Douthit, of Abilene, for appellee.

FUNDERBURK, J.

The title to a tract of land adjacent to the city of Abilene was in H. O. Wooten. The land was owned by said Wooten and Mayfield & McGee. Wooten made a contract with R. A. Coquille to sell the land. A plat of the land, showing a division thereof into lots and blocks, with streets and alleys, was filed and designated as the "Country Club addition." The contract constituted Coquille exclusive agent for the nominal owner, Wooten, to make sale of the lots in accordance with an agreed plan. The plan comprehended that the seventy-four lots were to be divided into thirty-seven units of interest. The several units were to be sold for $1,500 each, the sale thereof to be evidenced by certificates in which the purchaser of a unit was designated as "the contract holder." The certificate thus evidencing the ownership of units, in legal effect, constituted the contract holders as underwriters for the sale of all the lots or tracts at $750 per tract. Upon the sale of all the units the sale of the seventy-four lots was thereby underwritten by the purchasers of units for the aggregate sum of $55,500. The plan provided, and it was so specified in the certificates, that after the sale of all the units, all the lots were to be offered for sale at public auction. It was provided that, when a sufficient number of lots were sold to make the sum of $55,500, the remaining lots were to be sold for the benefit of all contract holders; the sum realized to be divided equally between them, besides the immediate return to each contract holder of the initial payment upon the contracts of $200. It was provided that the sale of a tract for an amount in excess of $750 should automatically reduce the price that each remaining tract was required to be sold for. The contract holders were under obligation, in the event sufficient lots were not sold to make the said sum of $55,500, to select lots and pay therefor the sum of $750, for which the nominal owner was 'to make deeds. Under said plan all units were sold; J. E. Stowe and J. L. Hockersmith having purchased one unit, and Nathan Landau one unit. At the auction sale it became necessary for the parties last named, and perhaps other contract holders, in order to comply with the obligations of their contracts, to take lots, and accordingly Wooten executed a deed to Stowe, Hockersmith, and Landau of tract 2 in block 12, also to Stowe and Hockersmith of tract 5 in block 2, and to Nathan Landau of lot 4 in block 6. The several deeds, in conformity to the provisions of the certificates, recited payment of a part of the purchase price, with obligations secured by vendor's lien, for the remainder. The said Stowe, Hockersmith, and Landau brought this suit against H. O. Wooten to cancel said deeds and rescind the conveyances on the ground of alleged fraud.

Plaintiffs' petition alleged as fraud a number of false representations and false promises, of which there need be mentioned only such as were submitted to the jury, since all others must be regarded as having been waived. Of the grounds of fraud not waived, the only one consisting of an alleged misrepresentation of an existing or pre-existing fact was that the defendant, through one or more of his agents, had represented that highway No. 30 had been definitely established along what defendant's agents represented to be an extension of Butternut street through the Country Club addition. Other acts of alleged fraud, as to which issues were submitted to the jury, and which were therefore not waived, were to the effect that said agents had represented that electricity for lights was to be placed on the Country Club addition at once, and that natural gas was to be placed upon or made available for said addition.

Upon the issues submitted, the jury found that Mayfield & McGee, the other joint owners with Wooten of the Country Club addition, and also R. A. Lewis, an employee of R. A. Coquille, were not agents of said H. O. Wooten. They further found that none of said agents, before plaintiffs signed the unit contracts, represented to plaintiffs that highway No. 30 had been definitely located through the Country Club addition by the extension of Butternut street; that some one or more of the said agents did state to plaintiffs that electricity for lights was to be placed on the Country Club addition at once, but that such promise was not a material inducement to plaintiffs in their purchasing of

unit contracts, and further that H. O. Wooten, at the time the promises were made, did intend to comply with said promise and had in fact substantially complied therewith. The jury further found that neither of the said agents promised plaintiffs that natural gas was to be placed upon or made available for said addition. Upon these findings judgment was rendered for the defendant, from which the plaintiffs have appealed.

■■ Appellants submit only two propositions as grounds upon which it is insisted that the judgment of the trial court should be reversed. It is first contended that the court erred in submitting to the jury the question of whether Mayfield, McGee, and Lewis, or either or any of them, were agents of H. O. Wooten, and that the evidence disclosed, as a matter of law, that they and each of them were such agents. As already noted, the jury found that they were not such agents. We have concluded that appellants' contention, as expressed in this proposition, must be sustained. Wooten's contract with Coquille was in writing. It expressly denominated Coquille as the exclusive agent of Wooten for the sale of the seventy-four lots, constituting the Country Club addition. The contract, among other things, provided that Coquille was to pay all of the expenses incurred in conducting the sale of said lots, such as, among other things, "salesmen's commissions." Clearly the contract contemplated the employment of salesmen in addition to Coquille. The only object of Coquille's agency being to sell the lots, such other salesmen were, of course, to sell or assist in the sale of said lots. The provision quoted we think implies the authority on the part of Coquille to appoint salesmen who would be agents of Wooten. In 2 C. J. 688, with reference to the authority of an agent to appoint subagents, it is said: "Express authority to appoint such agents is not always necessary, as such authority is usually to be implied when the agency obviously and from its very nature is such as to make the employment of sub-agents necessary and proper. In such cases the employment of such agents is presumed to have been contemplated when the power was given, and the agent has implied authority to appoint sub-agents within the limits of the necessities of the case." Texas cases cited as supporting the text are Barnes v. Downes, 2 Willson, Civ. Cas. Ct. App. § 524; Wright v. Isaacks, 43 Tex. Civ. App. 223, 95 S. W. 55. The same authority further says: "And the principal is bound by the acts of said sub-agent so employed, even though he has no personal knowledge of him." 2 C. J. 688. In Wright v. Isaacks, supra, the facts from which implied authority to appoint the subagent was held to arise do not so clearly imply such authority, as does the recitation in the contract in question im-

posing upon Coquille the duty of paying salesmen's commissions. The proposition we think would be wholly untenable that Coquille could, under this contract, appoint salesmen who, if by fraud procured a sale of the lots, would thereby secure to Coquille and Wooten the fruits of such fraudulent contracts beyond the remedy of the defrauded parties.

■ As to the agency of Mayfield & McGee, it seems to us that Wooten's own testimony was conclusive. As a witness, after testifying that he and Mayfield & McGee were joint owners of the property, and that he financed it for the three of them, further testified: "As to anything that Mayfield & McGee did being all right with me in making a sale, I will say I had not authorized them to do anything *except sell the property.*" (Italics ours.) " * * * When we bought this property, as I say, I was to take it over in my name and finance it, and *they were to do the work.*" (Italics ours.) " * * * I just left it entirely up to them." Certainly, it seems to us, under these facts, representations and statements made by McGee or Mayfield to accomplish a sale of the lots would be made as agents of Wooten, as well as for themselves individually.

We are therefore of opinion that the court was in error in submitting the question of agency to the jury, but should have instructed the jury to find for the plaintiffs on the question of such agency.

■ By their second proposition appellants seek to show that the court erred in excluding the testimony of certain witnesses to the effect that, shortly after the sale of the unit contracts to plaintiffs, the defendant's said agents made the same representations and promises to them as were alleged to have been made to the plaintiffs, including those which, as above stated, were not waived. The proposition makes the same contention as to the exclusion of certain newspaper advertisements containing, among other things, the same promises as to electric lights and gas. Appellants insist that the testimony was material and was admissible under an exception to the general rules of res inter alios acta. The general rule is that "evidence of transactions with which the parties against whom it is offered is not connected, is not admissible." 10 R. C. L. § 104, p. 937. As a specific application of said rule the same authority states: "In an action to recover damages from a principal for the tort of his agent, the rights and interests of the principal and agent are not identical, and therefore transactions between the agent and still another person are res inter alios acta and inadmissible in a suit against the principal for the tort of the agent." Id. Still another statement of the application of the rule is: " * * * The commission of an act charged against a person may not be proved by show-

ing a like previous act to have been committed by the same person." Id. Or, as stated in Corpus Juris: "The general rule is that the law will not consider evidence that a person has done a certain act at a particular time as probative of a contention that he has done a similar act at another time." 22 C. J. 744. The reasons for the rule are discussed in said authorities (10 R. C. L. p. 937, and 22 C. J. § 834, p. 743), and need not be restated here.

██ The exception under which it is contended that the evidence in question should have been admitted is that "other similar acts or representations of defendant at or about the same time as the transaction under consideration may be considered as tending to establish scienter or intent to defraud." 27 C. J. 60. The difficulty presented in the present problem is in giving proper effect to the fact that, in Texas, as respects representations of present or pre-existing facts, scienter, or intent to deceive or mislead, are immaterial as elements of actionable fraud. Mitchell v. Zimmerman, 4 Tex. 75, 51 Am. Dec. 717; Buchanan v. Burnett, 102 Tex. 492, 119 S. W. 1141, 132 Am. St. Rep. 900. Some decisions of our own courts have apparently given no effect to such fact in applying this exception to the general rule. Wolf. v. Lachman (Tex. Civ. App.) 20 S. W. 867; Wortman v. Young (Tex. Civ. App.) 221 S. W. 660; Rick v. Farrell (Tex. Civ. App.) 266 S. W. 522.

Upon mature consideration, however, we have concluded that the sounder view is expressed in Lott v. Dashiell, 233 S. W. 1103, 1109, wherein it was said: "We therefore think the court properly excluded this testimony, for it is only where the intent prompting an act in issue is material that it is competent to resort to a showing of similar acts as circumstantial proof of the act in issue as part of a system or scheme."

Almost all the authorities that we have examined agree in the holding that the evidence is admissible only to show fraudulent intent. In 12 R. C. L. p. 435, § 182, the author says: "Such evidence, when admitted at all, is competent only on the issue of motive or intention, and not on the issue whether plaintiff made the representations complained of. Hence it is not admissible where it is immaterial to the cause of action whether the false representations were made with a specifically bad intent or not, or in an action for damages for false representations in those states where proof of scienter is not required in such actions."

Certainly, we think, if the proffered testimony was admissible, if at all to prove fraudulent intent, and such intent, whether alleged or not, was immaterial, there would be no error in excluding such testimony.

██ This, it must be recognized, does not entirely dispose of the question presented, because there were allegations presenting issues submitted to the jury which did involve the existence of a fraudulent intent as a necessary element of the fraud alleged. Such were the allegations of promises to be performed in the future with reference to installing electric lights and gas in the Country Club addition. For such promises to constitute fraud at all it was necessary that they have been made with the intent at the time that they would not be performed. C. T. & M. Ry. Co. v. Titterington, 84 Tex. 218, 19 S. W. 472, 31 Am. St. Rep. 39; Tripplehorn v. Ladd-Hannon Oil Corpn. (Tex. Civ. App.) 8 S.W.(2d) 217. But we are unable to see that the excluded testimony could have had the slightest probative force to establish that particular intent. We are wholly unable to see that the fact that promises were made to third parties could in the slightest degree tend to prove the existence of an intention at the time not to perform such promises. It would seem that, if such testimony tended. to prove anything, it would be the contrary. Hence, upon the whole, we conclude that there was no error in the action of the court as thus complained of.

██ Under this view the error in submitting the question of agency becomes immaterial and harmless. Being of opinion that the judgment of the trial court should be affirmed, it is accordingly so ordered.