## BARKER v. MOSBY.

### No. 8707.

Court of Civil Appeals of Texas. Austin.

June 29, 1938.

Rehearing Denied July 20, 1938.

White, Taylor & Gardner, of Austin, for appellant.

Hart, Patterson, Hart & Brown, of Austin, for appellee.

BLAIR, Justice.

As concerns this appeal appellee, J. B. Mosby, sued appellant, R. E. Barker, for $2,000, alleged to be due as a broker's commission on account of the sale of Barker's ranch by appellee and associates. A trial to the court without a jury resulted in judgment for appellee as prayed; hence this appeal.

Prior to 1936, appellant referred to herein as Bob Barker, owned the ranch in question. He was in poor health and turned the management of the ranch over to his son, R. L. Barker, referred to herein as Pete Barker. In April, 1936, J. E. McCoy, a deputy sheriff and stockman, desired to lease a part of the ranch from Bob Barker, who told McCoy that Pete Barker was in charge and that "I have turned everything over to him. I can't see. Whatever you do will be all right. Just go down and see Pete." McCoy leased a part of the ranch from Pete Barker.

In the early fall of 1936, appellee, J. B. Mosby, who is and has been engaged in the real estate business in Austin for about 35 years, approached McCoy and told him he had a client who wanted to buy a large ranch. McCoy suggested the Barker ranch, and appellee requested him to see if it were for sale. Knowing that Pete Barker was in charge, McCoy approached him about the matter and Pete Barker told him that the ranch was for sale for $40,000. McCoy told him that appellee, a real estate broker, had a prospective purchaser, and that appellee would expect a 5% commission. Pete Barker told McCoy that $40,000 net was the price; and McCoy suggested that he add $2,000 to the price as commission. Pete Barker accepted this proposition and told McCoy to go ahead with the negotiations. The prospective purchaser was a Mr. Whittaker, with whom negotiations were begun, but no sale was made. Later a Mr. Ogden was also presented, but no sale was made, and the negotiations were with Pete Barker.

In December, 1936, appellee, McCoy, and Lee O. Allen, sheriff of Travis County, who had formerly engaged in selling real estate and was to some extent still engaged in the real estate business, acting together under an agreement to split the commission equally, secured Eugene Howard, who purchased the ranch for· $42,000. Allen and McCoy showed Howard the ranch and he agreed to purchase it. Allen took Howard to Pete Barker's place of business, who priced the land to Howard at $42,000; and Allen took the two to Judge Ike White's office, and he drew a formal contract, which recited that it was between "R. E. Barker and wife, Margaret Barker, acting by R. L. Barker, their agent, sellers, and Eugene Howard, purchaser." Howard signed the contract on

that day and placed $1,000 in escrow as earnest money. Pete Barker did not sign the contract until about two weeks later.

Before Pete Barker signed the contract, he called Allen by telephone and asked how much commission he was expecting. Allen told him he was expecting $2,000. Pete Barker objected to this amount and told Allen that after paying same and his indebtedness, his father would not get much out of the ranch. Allen told him that if such were true, he should not sign the contract, and that if he did and the sale were made, a $2,000 commission would be expected.

Howard went to Pete Barker and insisted that he sign and carry out the contract, and learned of the commission controversy. He insisted that such controversy did not concern him; whereupon he, Pete Barker, and probably Allen went to the office of Judge White where the matter of the commission was discussed, and upon his advice Pete Barker signed and carried out the contract with Howard. The deed to Howard was signed by R. E. Barker and wife and all of the children of R. E. Barker. No reason was shown for the children's signing the deed, because it was admitted that R. E. Barker and wife were the owners of the ranch.

For the purposes of bringing this suit, Allen and McCoy assigned their interest in the commission to appellee, Mosby.

The facts and circumstances detailed sustain the finding of the trial court that Pete Barker was the general agent of appellant in selling his ranch; and that as such general agent Pete Barker was authorized to employ and to bind appellant to pay the ·commission of the broker effecting the sale of the ranch. The undisputed evidence showed that Pete Barker was in charge of the ranch and was attempting to sell it. He signed the contract to sell it as agent of appellant. The contract recited in detail the indebtedness against the land, the amount that was to be paid in cash, and the amount to be represented by purchaser's note. The deed was in exact accord with the stipulations of the contract. Neither the owner nor his agent testified in the case. These facts and circumstances authorized the trial court to infer that Pete Barker was the general agent of Bob Barker in the sale of the land, under the rule stated in C. E. Parks Grain Co. v. Townsend, Tex.Civ. App., 267 S.W. 1011, as follows (page 1013): "* * * If agency is proved without showing its extent, it is presumed to be general and not special, not in respect to everything, but only in respect to the business with which the agency is concerned, and third persons dealing with an agent have the right to presume that his agency is general in the absence of notice to the contrary, even though, as between principal and agent, it may be only a special agency."

Appellant and his son alone knew the facts as to the extent of the authority of Pete Barker, and having failed to disclose their relationship, after the agency was established, such failure operates to increase the force of the evidence tending to show authority in the agent to employ the brokers to sell the ranch. Bailey v. Hicks, 16 Tex. 222; 2 Tex.Jur. 519. In any event the evidence showed that Pete Barker signed the contract of sale as agent for his father and mother, and since they carried out the contract as written, it is manifest that they authorized or ratified his agency and authority to sell the ranch. So the questions presented therefore are: (1) Whether in making such authorized or ratified sale of the ranch the agent had authority to employ the brokers; and if so, (2) whether he did employ appellee and associates to aid in making the sale of the land, or accepted their services under such circumstances as to entitle the brokers to a reasonable commission. We have reached the conclusion that both questions should be answered in the affirmative.

In the recent case of Republic Nat. Bank & Trust Co. v. Asbury, Tex.Civ. App., 91 S.W.2d 824, error dismissed, it was held that where a bank authorized its vice-president to sell its real estate, he was authorized to employ a broker to effect the sale; and that the bank was responsible to the broker who effected the sale. To the same effect is the case of American Land Co. v. Hutchinson Inv. Co., Tex. Civ.App., 45 S.W.2d 755, error dismissed. And in Wright v. Isaacks, 43 Tex.Civ.App. 223, 95 S.W. 55, it is held that a general agent employed by the owner to sell town lots had the authority to employ a broker, since the employment of such broker is usual and customary; and that the owner is responsible to the broker who effects the sale. See also Mecham on Agency (2d Ed.), § 316; 2 Am.Jur., p. 197; Eastland v. Maney, 36 Tex.Civ.App. 147, 81 S.W. 574.

In the instant case Pete Barker was the general agent of appellant, Bob Barker, in the sale of the land. Appellant accepted and ratified the sale by the agent by fully executing and carrying out the agent's written contract of sale. Therefore such agent had the authority to enter into a binding contract to sell the ranch and to employ brokers to effect such sale.

We also regard the evidence as being sufficient to sustain the finding and conclusion of the trial court that the general agent, Pete Barker, employed appellee and associates to sell the land, or accepted their services under such circumstances as would entitle them to a reasonable commission; and $2,000 is not contested as being unreasonable herein.

The evidence is undisputed on this issue. Pete Barker made a contract with Howard to sell him the Barker land, and Bob Barker performed this contract made by Pete. The land was sold to Howard under terms exactly conforming to the written agreement. It is also undisputed that the ranch was sold through the efforts of Mosby, Allen, and McCoy. Pete Barker had never heard of Howard until he was presented by Allen and McCoy. He knew a commission of $2,000 was expected. This was before any effort was made by Mosby, Allen, and McCoy to sell the Barker ranch, and after Bob Barker had advised McCoy that Pete Barker was in charge of the property. The evidence is undisputed that Allen and McCoy showed Howard the land, interested him in it, and sold it to him, after Pete Barker had told McCoy that he wanted $40,000 net for the land, and if a commission were expected it would be added to the purchase price. Allen took Howard to the place of business of Pete Barker, and they entered into a contract whereby Howard agreed to pay $42,000 for the land. The evidence is undisputed that before Pete Barker signed the contract for the sale of the land, he called Allen on the telephone and wanted to know the amount of the commission that was due, and his only protest was that the commission was too much. Allen told him that if it were too much, then he should not sign the contract. Under such facts and circumstances he signed the contract with full knowledge that if the ranch were sold to Howard, Allen would expect a commission of $2,000; and under such facts and circumstances the trial court could have reasonably inferred

and found that Pete Barker agreed to pay a $2,000 commission to Allen for the sale of this land. It could also have reasonably inferred that since with full knowledge that the broker had presented the purchaser to him, and that he had accepted his service, and had added $2,000 to the purchase price asked for the land, that he accepted such services under such circumstances as would require the payment of the commission. Stevens v. Karr, 119 Tex. 479, 33 S.W.2d 725; Farmers' Guaranty State Bank v. Burrus M. & E. Co., Tex.Civ.App., 207 S.W. 400; Marr-Piper Co. v. Bullis, Tex.Com.App., 1 S.W.2d 572; 2 Tex.Jur. 501.

We find no error in the judgment of the trial court, and it is affirmed.

Affirmed.