United States Court of Appeals
Fifth Circuit

**F I L E D**

**November 17, 2003**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 03-20013
_____

In The Matter Of: ADOBE ENERGY INC

                              Debtor

----------------------

CENTURY RESOURCES LAND LLC

                              Appellant

        v.

ADOBE ENERGY INC

                              Appellee

_____

Appeal from the United States District Court
for the Southern District of Texas
No. H-02-CV-1333
_____

Before KING, Chief Judge, DENNIS, Circuit Judge, and LYNN,
District Judge.*

KING, Chief Judge:**

---

        * District Judge of the Northern District of Texas,
sitting by designation.

        ** Pursuant to 5TH CIR. R. 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIR. R.
47.5.4.

A creditor of a Chapter 11 debtor filed a proof of claim in the bankruptcy court, asserting breach of a confidentiality agreement and seeking imposition of a constructive trust upon part of the debtor's property. On the debtor's objection to the proof of claim, the bankruptcy court held a trial and then disallowed the creditor's claim. The district court affirmed the bankruptcy court's order. For the following reasons, we also AFFIRM.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This appeal concerns whether the bankruptcy court erred in refusing to impose a constructive trust upon an oil and gas lease held by bankrupt debtor Adobe Energy, Inc. ("Adobe"). The creditor seeking to impose the constructive trust is the lease's previous holder, Century Resources Land, L.L.C. ("Century").

The subject lease covers land in Hardin County, Texas, in an area referred to as the Pine Island Prospect. In 1994, a geologist presented Edward DeStefano, an investor, with an opportunity for oil and gas exploration in this area. In a series of letter agreements, DeStefano promised to find a third-party investor to finance the development of a shallow formation identified by the geologist. The development of this formation was to be known as the East Sour Lake Field Redevelopment Project ("the Project").

DeStefano later presented the Project to Sheldon Solow, another investor.  Solow agreed to invest in the Project through the vehicle of a limited liability company, and so he and DeStefano formed Century in September 1995.  Solow owned a 55% stake in Century, and the remaining 45% interest was held by a company wholly owned by DeStefano.  Century was managed by DeStefano and Steven Cherniak, Solow's designee.  DeStefano bore the primary responsibility for acquiring the mineral leases needed to assemble the Project, and he also agreed to market the Project to third parties.

From 1995 to 1997, DeStefano accumulated a number of oil and gas leases for use in the Project.  These included a lease over a certain 401-acre tract held by the Choice Thompson Family Trust ("the Thompson Lease").  The acquisition of the Thompson Lease required Century to obtain a release from the oil companies that had previously completed a successful well on the tract.  In securing this release, an effort that began before the formation of Century, DeStefano used the services of E. David Philley, an attorney who had previously assisted DeStefano in connection with another Project-related lease in 1995.  Century eventually succeeded in acquiring the Thompson Lease in an instrument dated July 23, 1996.  All sides agree that Philley worked as DeStefano's attorney at various times both before and after the formation of Century, but the parties disagree over whether Philley was also Century's attorney.

3

Century began to market the Project in September 1997. As part of that effort, Century put together a brochure that included geological data and analyses, as well as documents setting forth the rules and terms governing the offer. These terms stated, among other things, that prospective partners must possess minimum financial and technical qualifications; Century included these requirements because it planned to retain an interest in the Project, once developed. The rules also required prospective partners to sign a confidentiality/non-competition agreement before they would be given a presentation about the Project.

On October 14, 1997, Century's representatives presented the Project to Adobe. The primary dispute at trial centered upon what happened at this meeting. Century contends that Adobe's representatives signed the confidentiality/non-competition agreement, or at least orally agreed to its terms. Adobe's representatives testified that they neither signed nor orally assented to any agreement. The bankruptcy court found that Adobe had orally agreed to generalized terms of confidentiality and non-circumvention, but the court also found that the oral agreement did not include the specific details set forth in the written document that was included in the Project brochure.

Philley happened to be at Adobe's offices on another matter at the time of the October 14 meeting, and he apparently entered the meeting as it was breaking up. After the meeting, he spoke

4

with Adobe's president, Michael McMahon, whom he knew from previous dealings.  The two apparently agreed on a scheme according to which Adobe would purchase the Project and then immediately re-sell it to a third party, TransTexas, at a substantial profit.  In support of this plan, Philley would produce a sham letter in which Century would offer to sell the Project to Adobe for $1200 per acre, a figure substantially higher than that actually contemplated.  McMahon would then show the letter to TransTexas, using the bogus $1200 figure to garner a similar price from TransTexas.  The difference between what Adobe would actually pay to Century and the inflated price received from TransTexas would then be split between Philley and Adobe.  Century's representatives did not know of this plan, much less authorize it.

Century had for some time been suffering from an internal conflict over how to manage the company and market the Project. The court documents submitted by Century as part of its proof of claim show that Solow obtained an injunction against DeStefano's marketing efforts shortly after the Project was presented to Adobe.  (Indeed, matters would later deteriorate further: Solow and Century sued DeStefano in 1999 in New York, alleging that DeStefano had mismanaged the business and conspired with Adobe to induce Century to accept Adobe's offer.)

Despite this internal dissension, negotiations with Adobe continued.  On October 21, 1997, Adobe sent a letter to Century

offering to buy an interest in the Project for $700 per acre. Adobe then raised the offer to $800 on October 30, and the parties continued to negotiate after that date. During the course of negotiations Adobe apparently misrepresented its technical and financial ability to develop the Project. On May 20, 1998, there was a meeting between DeStefano, Solow, and McMahon, after which Adobe made yet another offer to Century. On June 1, Adobe communicated to Century, through DeStefano, a June 4 deadline for acceptance of the latest offer. Solow replied on June 4, not to accept Adobe's offer but to inform Adobe that DeStefano had been removed from his position as one of Century's managers. Negotiations continued for a time, with Cherniak now acting as Century's primary representative. But Century again rejected Adobe's overtures, having formed a suspicion that Adobe was an unsuitable partner.

Events then took an unfortunate turn for Century. On July 24, 1998, Century received notice that the Thompson Lease had expired because Cherniak had mistakenly failed to pay a delay rental. Century's loss became Adobe's gain when Philley, who had learned of the termination notice from DeStefano, told McMahon and another Adobe executive about the opportunity to acquire the now-expired Thompson Lease. The record contains a faxed message from Philley, addressed to his "compadres" at Adobe, urging that they immediately contact the Thompson family's representative. Despite Century's efforts to tender the late rental payment, the

6

Thompson family cancelled Century's lease and, on August 31, 1998, agreed to a new lease with Adobe.

After acquiring the Thompson Lease, Adobe began to drill, using the geological information learned from Century's presentation to locate its wells. Little came of the wells, however, because Adobe damaged the production zone by improperly cementing its pipes. In addition, Adobe experienced cash flow problems traceable to its depletion and overproduction of previously drilled wells.

Adobe filed a voluntary petition under Chapter 11 of the Bankruptcy Code on September 10, 1999. On January 12, 2000, Century filed a proof of claim based upon pending actions against Adobe in the Texas and New York state courts. Adobe objected to the claim, and the bankruptcy court held a trial. Century's case was based on two contentions: (1) Adobe had breached the October 14 confidentiality/non-competition agreement and (2) Adobe would be unjustly enriched unless a constructive trust were imposed on the Thompson Lease and its proceeds. After several days of trial, the bankruptcy court set forth findings of fact and conclusions of law in a memorandum opinion. The bankruptcy court concluded that Century had not satisfied the requisites for a constructive trust under Texas law, and it disallowed Century's claim for breach of the confidentiality/non-competition agreement because Century had offered no evidence of damages. Abandoning its claim for damages, Century appealed the constructive trust

decision to the district court. In a lengthy opinion, the district court affirmed the bankruptcy court, concluding that Century had not satisfied two of the three requisites for a constructive trust under Texas law. Specifically, the district court held first that Century had not shown that Adobe committed fraud (either actual or constructive); second, because of the accidental lapse of Century's lease over the Thompson property, the district court held that Adobe's later lease was not a traceable res upon which to impose the trust. In addition, the district court suggested, sua sponte, that Century should have initiated a formal adversary proceeding rather than using the proof of claim process.

Century now appeals to this court.

## II. STANDARD OF REVIEW

We review the bankruptcy court's findings of fact for clear error and its conclusions of law de novo. Killebrew v. Brewer (In re Killebrew), 888 F.2d 1516, 1519 (5th Cir. 1989). Under the clear error standard, the bankruptcy court's factual findings will be set aside "only if, on the entire evidence, we are left with the definite and firm conviction that a mistake has been made." Allison v. Roberts (In re Allison), 960 F.2d 481, 483 (5th Cir. 1992). The ultimate decision whether or not to impose the equitable remedy of a constructive trust is committed to the sound discretion of the trial court, the exercise of which we

8

review for abuse.  <u>Burkhart Grob Luft und Raumfahrt GmbH & Co. KG</u> <u>v. E-Systems, Inc.</u>, 257 F.3d 461, 469 (5th Cir. 2001).  The trial court necessarily abuses its discretion if it bases its decision on an error of law or on clearly erroneous factual findings.  <u>Cooter & Gell v. Hartmarx Corp.</u>, 496 U.S. 384, 405 (1990).

### III. DISCUSSION

The Bankruptcy Code defines the bankruptcy estate broadly, encompassing most of the property held by the bankrupt debtor.  <u>See</u> 11 U.S.C. § 541 (2000).  However, the bankruptcy estate does not include any property to which the debtor holds only legal, but not equitable, title.  <u>Id.</u> § 541(d).  The bankruptcy estate therefore generally does not embrace property that the debtor holds in trust for another, nor does it include property subject to a constructive trust.  A constructive trust is therefore an attractive option for a disappointed creditor, for it gives the creditor the sole claim on property that would otherwise be distributed pro rata among all creditors.  <u>See</u> <u>Haber Oil Co. v.</u> <u>Swinehart (In re Haber Oil Co.)</u>, 12 F.3d 426, 435-36 (5th Cir. 1994).[1]

---

[1]  In its briefs on appeal to the district court, Century offered to subordinate its constructive trust so that it would not interfere with the priorities established by the bankruptcy court's reorganization plan.  We are not sure that Century's latter-day concession, made on appeal, is relevant to the question of whether the bankruptcy court abused its discretion. In any event, our decision rests squarely on the requisites for a constructive trust under Texas law, not on the Bankruptcy Code's overarching policy of ratable distribution among creditors.

9

Under Texas law, a constructive trust is an equitable remedy that the courts may impose when "the person holding the title to property would profit by a wrong or would be unjustly enriched if he were permitted to keep the property." Omohundro v. Matthews, 341 S.W.2d 401, 405 (1960). Imposition of a constructive trust is appropriate when the plaintiff proves: (1) the defendant has committed actual fraud or has committed constructive fraud through the breach of a preexisting fiduciary or confidential relationship, (2) the defendant would be unjustly enriched by retaining the proceeds of the wrong, and (3) there is a traceable res upon which to impress the trust. See Haber Oil, 12 F.3d at 437; Monniq's Dep't Stores, Inc. v. Azad Oriental Rugs (In re Monniq's Dep't Stores, Inc.), 929 F.2d 197, 201 (5th Cir. 1991); Meadows v. Bierschwale, 516 S.W.2d 125, 128-29 (Tex. 1974). The courts below identified two deficiencies in Century's request for a constructive trust: Century had not shown that Adobe committed fraud or breached a confidential relationship, and Adobe's subsequent lease on the Thompson tract was not a traceable res upon which to impose the trust.

On appeal, Century argues forcefully that the equitable remedy of constructive trust is flexible enough to pierce through the lapse of Century's lease and attach to Adobe's subsequent lease, thereby satisfying the traceable res requirement. Happily, we need not decide that question, for we hold that Century has failed to satisfy the first requisite for imposition

10

of a constructive trust: fraud or breach of a confidential relationship.  We discuss each of those alternatives in turn.

**A.   Actual Fraud**

Assuming that the other requirements are satisfied, a plaintiff can show entitlement to a constructive trust by proving that the defendant committed fraud.  <u>Meadows</u>, 516 S.W.2d at 128-29.  Under Texas law, a plaintiff asserting fraud must prove that: (1) a material representation was made, (2) the representation was false, (3) the speaker made the representation knowing it was false, or made it recklessly without any knowledge of its truth and as a positive assertion, (4) the speaker made the representation with the intent that the plaintiff should rely on it, (5) the plaintiff acted in reliance on the representation, and (6) the plaintiff thereby suffered injury.  <u>Eagle Props.,</u> <u>Ltd. v. Scharbauer</u>, 807 S.W.2d 714, 723 (Tex. 1990).  While Century has persuaded us that various of these elements might be present in different parts of the events underlying this case, we must agree with the courts below that nowhere do the elements come together so as to constitute a fraud that would entitle Century to a constructive trust over the Thompson Lease.

Century has pointed to a number of misrepresentations made by Adobe during the course of the parties' dealings.  It appears, for example, that Adobe misrepresented its financial and technical ability to carry out the proposed project, intending to

induce Century to transact business with a company that——if the true facts were revealed——failed to meet Century's minimum terms. The principal impediment to founding an action upon these misrepresentations, however, is that Century and Adobe never consummated their deal; Century did not sell the Project leases to Adobe. While the misrepresentations may have induced Century to extend the negotiations unnecessarily, Century has not explained how the mere continuation of negotiations might have injured Century or unjustly enriched Adobe. Century has not, for instance, contended that its negotiations with Adobe cost it an opportunity to market the Project to a more suitable partner—— those types of injuries have never been the basis of Century's claims. Instead, the relevant harm has been the loss of the Thompson Lease (or the ability to profit from it) to Adobe. That loss, however, bears no connection to Adobe's wrongful continuation of negotiations.

Century makes a stronger case for fraud when it argues that Adobe wrongfully induced Century to reveal its geological secrets at the October 14 meeting, which revelation was made in reliance upon Adobe's promise of confidentiality and non-circumvention. Although Adobe's representatives apparently did not sign Century's proffered written agreement at the October 14, 1997, meeting, the bankruptcy court found that the parties reached a vague oral agreement to protect Century's confidential proprietary information. The bankruptcy court further found that

Adobe later breached that agreement by using Century's information to target its drilling efforts once it acquired the Thompson lease.

Adobe's breach of the oral confidentiality agreement would at first blush appear to sound in breach of contract, and it is well-settled that the mere failure to keep a promise is not itself fraudulent.[2] Nonetheless, the Texas courts also recognize that "[a] promise to do an act in the future is actionable fraud when made with the intention, design and purpose of deceiving, and with no intention of performing the act." Spoljaric v. Percival Tours, Inc., 708 S.W.2d 432, 434 (Tex. 1986). The crucial question, therefore, is whether Adobe's representatives lacked any intention, at the time of the oral agreement, of honoring their promise to keep Century's information secret. Like other issues of intent, this is generally a question of fact. Coffel v. Stryker Corp., 284 F.3d 625, 634 (5th Cir. 2002); Spoljaric, 708 S.W.2d at 434.

Century has pointed to a number of circumstances that, in its view, lead to an inference that Adobe's representatives never had any intention of maintaining confidentiality. These circumstances include the fact that Adobe later denied that any

---

[2]    Indeed, as remarked earlier, Century had originally asserted a claim for breach of the agreement, but the bankruptcy court disallowed it because there was no evidence on damages. A constructive trust, on the other hand, generally does not require proof of damages. See Kinzbach Tool Co. v. Corbett-Wallace Corp., 160 S.W.2d 509, 514 (Tex. 1942).

confidentiality agreement had ever existed, as well as the speed with which McMahon and Philley hatched their secret scheme to sell the Project to TransTexas at an inflated price—which transaction would likely involve revealing Century's information, though it is unclear whether that in fact happened. Later events are, of course, admissible evidence on the question of earlier intent.[3] The bankruptcy court, which had the advantage of listening to the witnesses, concluded that Adobe's representatives did not harbor a contemporaneous fraudulent intent. On appeal, the district court's opinion provided a detailed consideration of each of the various circumstances that Century would use to infer fraudulent intent. As the district court's careful opinion explains, Century's evidence of later circumstances is susceptible of more than one reasonable interpretation. For example, if Adobe's representatives never intended to keep Century's information confidential, but promised to do so only to induce Century to reveal its data, then there would have been little reason for them to continue with months of negotiations. In the end, it is unclear to us whether Adobe's

---

[3] The Texas courts have held that later circumstances of the sort identified by Century can raise an inference that a promisor never intended to keep an agreement. See, e.g., T.O. Stanley Boot Co. v. Bank of El Paso, 847 S.W.2d 218, 222 (Tex. 1992) ("Denying that a promise has been made is a factor showing no intent to perform when the promise was made."); Spoljaric, 708 S.W.2d at 435 (stating that the failure to engage in any pretense of performance is a factor tending to prove the lack of an earlier intent to perform).

representatives intended to misuse Century's secrets from the start. Therefore, in assessing the bankruptcy court's findings on this point, we cannot say that "we are left with the definite and firm conviction that a mistake has been made," Allison, 960 F.2d at 483.

## B. Breach of Confidential Relationship

As an alternative to proving that the defendant committed actual fraud, a plaintiff may be entitled to a constructive trust upon showing that the defendant committed constructive fraud by exploiting a preexisting confidential relationship. See Monnig's Dep't Stores, 929 F.2d at 201-02; Meadows, 516 S.W.2d at 128. Summarizing Texas law on this point, we have said the following:

> In recognizing a constructive trust, the critical requirement . . . is that the parties have a confidential or fiduciary relationship prior to and apart from the transaction in question. This relationship may be established through prior joint business ventures, family relationships, or other types of close, confidence-inducing relationships. It need not arise from a strict, formal fiduciary relationship. However, mere subjective confidence among business associates or the like is insufficient to support a constructive trust.

Harris v. Sentry Title Co., 715 F.2d 941, 946 (5th Cir. 1983) (citations omitted), modified on other grounds, 727 F.2d 1368 (5th Cir. 1984).

We do not take Century to assert that it shared a preexisting confidential relationship with Adobe. Rather, Century's argument focuses on Philley's role. All sides agree that Philley had acted at times as DeStefano's lawyer. According

15

to Century, Philley had also acted as the company's lawyer. Philley thus owed duties of loyalty to Century, duties that he breached (says Century) when he told Adobe of the chance to acquire the Thompson Lease. Adobe induced (or at least knowingly accepted the benefits of) Philley's breach of that fiduciary duty. Century therefore asks the court to disgorge from Adobe the ill-gotten proceeds of Philley's evident betrayal. This argument appears to be a viable theory under Texas law. See Ginther v. Taub, 675 S.W.2d 724, 728 (Tex. 1984) (allowing a constructive trust to be imposed against the beneficiary of an attorney's breach of fiduciary duties to his client); Kinzbach Tool Co., 160 S.W.2d at 514 ("It is settled as the law of this State that where a third party knowingly participates in the breach of duty of a fiduciary, such third party becomes a joint tortfeasor with the fiduciary and is liable as such."). We shall therefore assume that Century would be entitled to a constructive trust upon the Thompson Lease (or its proceeds), if Adobe acquired it through Philley's breach of a confidential relationship with Century.

While Century has made this theory of constructive fraud one of its main arguments on appeal, it was not so prominent at trial. The main issues at trial were whether the parties had entered into a binding confidentiality agreement at the October 14 meeting and whether Adobe had committed actual fraud. To the extent that Century's post-trial brief discussed the legal

16

requisites for a constructive trust, its argument focused on actual fraud, though it did also state that a breach of a preexisting confidential relationship would likewise support a constructive trust. The brief asserted that Philley was Century's lawyer, but it did not cite authority that would help the bankruptcy judge assess whether such a relationship existed; nor did the brief cite authorities, such as those noted in the previous paragraph, that would show that a constructive trust could be imposed against Adobe as the beneficiary of Philley's apparent misconduct. In its opinion, the bankruptcy court did not address this legal theory of recovery in any detail, but it did not need to do so, for it concluded that Century's claim for a constructive trust failed due to the absence of a traceable res. It may be that the bankruptcy court fully understood Century's argument regarding constructive fraud but simply chose to dispose of Century's claims by focusing on the res requirement, a choice that it is certainly entitled to make.[4] Another explanation, however, is that Century's oblique presentation of the issue did not suffice to properly put the theory before the trial court. As we have warned in the past, "the litigant must press and not merely intimate the argument during the proceedings before the [trial] court. If an argument

---

[4] We note that we are permitted to affirm the bankruptcy court's judgment on grounds other than those on which it relied. See Besing v. Hawthorne (In re Besing), 981 F.2d 1488, 1494 (5th Cir. 1993).

17

is not raised to such a degree that the [trial] court has an opportunity to rule on it, we will not address it on appeal." FDIC v. Mijalis, 15 F.3d 1314, 1327 (5th Cir. 1994). We believe that Century's constructive fraud argument presents a close question under that rule. To avoid the harshness of a forfeiture, we will address the merits of Century's constructive fraud argument.

Century's argument is predicated upon the contention that the bankruptcy court found as a matter of fact that Philley had acted as Century's lawyer; having made that factual finding, Century's argument continues, the court then erred as a matter of law by failing to impose the constructive trust needed to disgorge from Adobe the proceeds of Philley's breach. We reject the first step of Century's argument, however, for we do not share Century's view of the bankruptcy court's findings. In a portion of its opinion discussing background facts related to the accumulation of leases needed for the Project, the bankruptcy court stated that Philley negotiated with the Thompson family on Century's behalf. Yet this does not necessarily mean that an attorney-client relationship existed between Philley and Century. Under Texas law, there is no attorney-client relationship absent privity of contract; the fact that an attorney undertakes services for the benefit of an entity does not mean that the entity is the attorney's client. See First Nat'l Bank of Durant v. Trans Terra Corp. Int'l, 142 F.3d 802, 806-08 (5th Cir. 1998);

18

Banc One Capital Partners Corp. v. Kneipper, 67 F.3d 1187, 1198–99 (5th Cir. 1995); Barcelo v. Elliott, 923 S.W.2d 575, 578-79 (Tex. 1996).[5]

Alternatively, if we accept Century's position that the subject statement was indeed a finding that Philley was Century's attorney, then the finding would not be supportable. The attorney-client relationship "results from the mutual agreement and understanding of the parties concerned." Parker v. Carnahan, 772 S.W.2d 151, 156 (Tex. App.—Texarkana 1989, writ denied). There is no evidence of an express contract between Philley and Century. On the contrary, Philley testified that his client was DeStefano, and Cherniak did not contradict that testimony.

It is true that an attorney-client relationship may also be formed by implied contract; that is, an agreement may be implied from actions that reveal the parties' intent to establish the relationship. Id.; see also Yaklin v. Glusing, Sharpe & Krueger, 875 S.W.2d 380, 383 (Tex. App.—Corpus Christi 1994, no writ). But "[a]lthough the attorney-client relationship can be implied,

---

[5] Century argues in its reply brief that the strict Texas privity rule applies only in the context of attorney malpractice cases. The reason that the privity rule is applied in malpractice cases, however, is precisely because malpractice liability runs only in favor of one who is the attorney's client. See First Nat'l Bank of Durant, 142 F.3d at 806 ("Texas law is clear that a legal malpractice claim requires proof of an attorney-client relationship between the plaintiff and the defendant attorney."); see also Barcelo, 923 S.W.2d at 578-79. The question here is whether Philley breached professional duties owed to his client, so the privity rule applies.

19

courts will not readily impute the contractual relationship absent a sufficient showing of intent." Banc One, 67 F.3d at 1198. The district court explained at some length, and very persuasively, that the record does not support the existence of any such intent. Philley testified that he worked for DeStefano, and this was the only testimony as to the various actors' intentions. Significantly, Philley's work for DeStefano on Project-related leases began before the formation of Century, and this relationship did not appear to change once the company was formed. Moreover, Philley did not look to the company for payment when DeStefano was unable to pay Philley's legal fees.

This is certainly not a case in which the interests of DeStefano were simply the same as those of Century, such that his personal attorney would automatically represent Century as well. The documents forming Century, as well as the letter agreement between DeStefano's wholly owned company and Solow, give the two owners distinct interests and responsibilities with respect to Century. As we noted earlier, DeStefano's company held only a minority interest in Century. On Century's own view of the case, DeStefano was very much pursuing his own interests in his management of Century.

As a manager of Century, DeStefano may well have had the authority to hire attorneys to work for the company.[6] But that

---

[6] Even in the absence of a specific authorization from the principal, an agent's authority to hire subagents and engage

20

does not mean, as Century seems to believe, that any attorney hired by DeStefano would be the company's attorney. Century did not produce evidence that would establish the necessary intent to form such a relationship between Philley and Century——or rather to transform DeStefano's relationship with Philley into a relationship between Philley and Century. Absent such intent, the fact that Philley's services benefitted Century fails as a matter of law to establish an attorney-client relationship. <u>See</u> <u>First Nat'l Bank of Durant</u>, 142 F.3d at 806-08.

We note that Century also argues on appeal that other types of fiduciary or confidential relationships apart from an attorney-client relationship might have existed between Philley and Century, such as that Philley was Century's agent or that there was at least an informal relationship of confidence between the two. Century did not argue these theories in its pre-trial statement and post-trial briefs submitted to the bankruptcy court; insofar as constructive fraud was an issue in the bankruptcy court, the suggestion was that Philley was Century's attorney. To the extent that these new theories are separable from the claim that an attorney-client relationship existed, we

---

contractors can often be inferred. <u>See</u> <u>Stowe v. Wooten</u>, 37 S.W.2d 1055, 1057 (Tex. Civ. App.—Eastland 1931), <u>aff'd</u>, 62 S.W.2d 67 (Tex. Comm'n App. 1933, judgm't adopted); RESTATEMENT (SECOND) OF AGENCY § 80 (1958). In this case, however, the documents creating Century appear to impose significant restrictions on DeStefano's power to bind the company. For purposes of our decision, we may assume that DeStefano would have had the power to engage Philley as Century's lawyer.

21

do not consider them on appeal because they were not raised in the bankruptcy court. See <u>Clyde Bergemann, Inc. v. The Babcock & Wilcox Co. (In re The Babcock & Wilcox Co.)</u>, 250 F.3d 955, 961-62 (5th Cir. 2001).

Century has been roughly treated in this matter——by Adobe, by Philley, and perhaps by its own manager, DeStefano. Understandably, Century has sought redress, and its able counsel have advanced several theories through which its losses might be recouped, including the device of a constructive trust. Yet while the constructive trust is a flexible equitable tool, "it cannot correct every injustice." <u>Pope v. Garrett</u>, 211 S.W.2d 559, 562 (Tex. 1948). The court's discretion to impose a constructive trust is confined by certain rules, and Century has not satisfied them.[7]

## IV. CONCLUSION

For the foregoing reasons, the district court's judgment affirming the bankruptcy court's disallowance of Century's proof of claim is AFFIRMED.

---

[7] Given our disposition of the case, we need not consider the possibility, suggested by the district court, that Century's claim is procedurally faulty in that it was conducted through proof of claim proceedings rather than through a full-fledged adversary proceeding. <u>See generally</u> <u>Haber Oil</u>, 12 F.3d at 437-40 (explaining when a formal adversary proceeding is required).